## OF THE

# Supreme Court of Florida,

## AT

# EXTRA AUGUST TERM, 1854,

## HELD AT TALLAHASSEE.

---

THOMAS ORMAN, ADMINISTRATOR OF SAMUEL SIMPSON, DECEAS-
ED, APPELLANT, VS. BARNARD, ADAMS & CO., APPELLEES.

1. It is the duty of the Appellant or his Attorney or Solicitor, to see that the original record of a cause, about to be removed into the Supreme Court, is correctly made out and skilfully prepared.

2. It is a practice of doubtful utility and *not to be encouraged*, to permit in the Appellate Tribunal *oral admissions* to supply the defects and omissions in the record.

3. Where, in a Defendant's answer, the "want of consideration" is formally set up, and is insisted upon in the argument, as a substantive defence, yet the Court will look into the whole answer to determine whether the issue intended to be raised is one of *fact* or only *an inference of law.*.

4. "Want of consideration," as a defence, must be so set up as not to present a *double issue*—in other words, it must simply *negative* a consideration; and anything beyond that, showing that the party defendant was only deceived or disappointed in that which he relied upon as a consideration, changes the defence from that of a "want," to "illegality" or "failure."

5. The case of the Southern Life Insurance and Trust Company, vs. Cole, (4 Fla. R. 377) so far as it makes the 24th Sec. of the Act of Nov. 23, 1828, regulating judicial proceedings, applicable to Courts of Equity—*doubted.*

6. Only such matters of fact set forth in the answer of Defendant as are clearly responsive to the allegations of the Bill, will be considered as *evidence* in the cause. Matters of fact set up and insisted upon as a substantive defence, must be established by proof *aliunde*.

7. The general rule that "a well connected train of circumstances is as conclusive of the existence of a fact, as is the most direct and positive evidence," is as applicable to a Court of Equity as to a Court of Law. And so also is the other general rule, that "the best evidence the nature of the case admits of must always be produced."

8. But the former of these rules is not of universal application, and therefore reference ought always to be had to the *nature* of the fact to be proved; for there are some facts peculiarly susceptible of positive proof, whilst others, from their very nature can be established only by circumstances.

9. In the consideration of a fact which is peculiarly susceptible of positive and direct proof, the Court will not be influenced by mere *circumstances* to adopt a conjectural conclusion, in regard to its existence.

Appeal from a decree of the Circuit Court from Franklin County.

This was a bill in Chancery instituted by Barnard, Adams & Co., against Thomas Orman, administrator of Samuel Simpson, deceased, for the foreclosure of a mortgage. The bill alleges, that on the 16th day of March, 1839, Samuel Simpson executed his bond, payable to the Southern Life Insurance and Trust Company, on or before the expiration of five years after date, for six thousand dollars, and that to secure the payment of the said bond, principal and interest, said Simpson, at the same time, executed a mortgage to said Southern Life Insurance and Trust Company, on certain town property in the town of Apalachicola. The bill further alleges that the said bond and mortgage were afterwards regularly, and for a valuable consideration, assigned to said Barnard, Adams & Co. Copies of the bond and mortgage and of their assignment to complainants, were exhibited with the bill. The following receipt is endorsed on the bond, viz: " Received, January 1840, two hundred and forty dollars in full for interest on this to date, it being in

530

SUPREME COURT.

Simpson's Adm'r. vs. Barnard, Adams & Co.—Statement of Case.

full for dividend on sixty shares of Southern Life Insurance and Trust Company stock."

The answer sets forth that the said bond and mortgage were obtained from Simpson by the misrepresentation of the officers of the Southern Life Insurance and Trust Company, and alleges that it was represented to Simpson that the Company had stock for sale, which stock was represented to be very valuable; that the Company was in a very prosperous and flourishing condition, and that said stock would pay large and profitable dividends; whereas it is alleged in the answer that at the time these representations were made, the Company was greatly embarrassed, and on the verge of bankruptcy.

The answer further alleges that the said bond and mortgage were given not for the consideration of $6,000 as in said bond stated, but for the consideration of a certificate purporting to entitle said Simpson to sixty shares of capital stock in said Company; that the stock, at the time the certificate for the same was issued, was not nor has it been since, of any value, and that the said stock certificate was issued without authority of said charter, or any bye-law passed in accordance with its provisions, but contrary to its express letter and spirit, by reason whereof the said Simpson, nor his heirs or representatives, could acquire no legal title to any interest in the capital stock of said Company, as the defendants were advised and believe; that said bond and mortgage were fraudulently obtained from Simpson, and that they were given without consideration; that Barnard, Adams & Co. received the same after maturity, and as collateral security merely, and that the assignment thereof was without authority, and conveyed no right or title to complainants; that by the charter of the Company, the said bond and mortgage were unassignable, but were to remain as a security for the ultimate payment

of the liabilities of the Territory of Florida, assumed for said Company.

The following resolution of the Board of Directors of the Southern Life Insurance and Trust Company, adopted 15th February, 1839, appears in the record, viz: " *Resolved,* That the Southern Life Insurance and Trust Company, having had a portion of their stock surrendered to them, in pursuance of an amendment to their charter, passed in February, 1838, are prepared to receive applications for their stock, at par, on the pledge of bonds and mortgages, upon approved, unincumbered real and personal estate, held in security in Florida, to the amount of one million dollars, at their office at Apalachicola."

There also appears in the record a copy of a circular issued by the Company, dated May 13, 1839, informing the public that bonds and mortgages would be received in exchange for the stock of the Company, to be issued at par, and inviting those who wished stock, to make early application to their agent at Tallahassee. This circular represented that the stock of the Company was to draw dividends semi-annually, and that according to the dividends theretofore, the stock drew two per cent. per annum more than the mortgages drew interest to the Company.

There also appears in the record a copy of an answer of George Field, President of the Southern Life Insurance and Trust Company, filed in another cause, in which it is said that between three and four hundred thousand dollars of consolidated stock was distributed in Middle and West Florida, the stockholders becoming debtors to the Institution generally, both by bond and mortgage and by note, having become purchasers of stock, and received loans from the Company.

The evidence of T. R. Betton, in the record, shows that

Samuel Simpson was a stockholder in 1839, and held sixty shares of stock.   He states that the books of the Company do not show any other consideration for the bond than what appears upon its face.

*M. A. Long* and *John Erskine* for Appellant.

*James T. Archer* and *W. G. M. Davis* for Appellee.

DuPONT, J., delivered the opinion of the Court :

Preliminary to stating the grounds upon which we have decided this cause, it may not be amiss to remark upon the condition of the record, and to call to the special attention of the members of the bar the very unskilful manner in which it has been prepared, and consequently the great confusion which prevails in the presentation of the case to the mind of the Court.   The record does not, as it ought to do, give a history of the proceedings in the cause, but is for the most part only a copy of the files.  In no part of the record is it stated what proofs were read at the hearing, but we find only *copies* of exhibits, depositions and other documents, without any statement going to show whether or not they, or any of them, were read at the hearing, and if read, whether with or without exception. This, in an Equity cause especially, where all of the proofs are required to be reduced to writing, and where we have not, as in a Court of common law, the benefit of the bill of exceptions, whose office it is to set forth the evidence adduced at the trial, is certainly very irregular and well calculated to produce confusion and uncertainty, and possibly injustice to parties litigant.   A corrective ought to be applied, and we know of none more efficient than the personal superintendence of the Solicitor of the Appellant, whose duty it is to see that a correct and perfect record of the proceedings in the cause is made out for the inspection and information of the Ap-

pellate Tribunal. In the frequent changes and constant ro-
tation which are continually going on under the operation
of our Republican organization, it is perhaps presuming
too much to expect of the Clerks of our Courts that profes-
sional knowledge and scientific skill which is to be met with
amongst the officers of the English Courts, or even of the
Courts of the older States. But in making this remark, we
would not by any means be understood to offer an apology
for, or to extenuate, either the negligence, ignorance or un-
skilfulness of this class of officers; for there is an im-
plied promise on the part of every man, who either solicits
or accepts office, that he either is, or will speedily qualify
himself for the efficient discharge of his duties.

This particular record does not present an isolated case,
for we are constrained to remark that it is but a sample of
the larger portion of those which are of file in this Court.
But, to apply the foregoing remarks to the record under
consideration, it is very manifest (if the strict rule of Chan-
cery practice were adhered to,) that this cause would be before
us without any proofs; and in order to rescue it from this
category, we have been constrained to resort to the oral
admission of the Counsel on either side—a practice of ex-
tremely·doubtful utility, and not to be encouraged. The
admission' to which we refer and which we understood to
have been made at the Bar, was to the effect that the Court
should consider everything contained in the record, parta-
king of the character of, and purporting to be evidence, as
having been read at the hearing without exception, giving
to each item of evidence such weight as its *relevancy*
might entitle it to. It is upon this basis that we have con-
sidered the matters of evidence which have led our minds
to the conblusion at which we have arrived in the final de-
termination of this case.

The bill was filed by Barnard, Adams & Co., (the appel-

lees,) as the assignees of the Southern Life Insurance and Trust Company, for the foreclosure of a mortgage, which it is therein alleged was executed and delivered to the said Company by Samuel Simpson, the intestate of respondent. The mortgage was given to secure the payment of a bond purporting to have been executed by the said Simpson, for the payment of $6,000, and conditioned to be void upon the full payment of the said sum of money, on or before the expiration of five years from the date thereof. The date of both the bond and mortgage is the sixteenth day of March, A. D. 1839. There is nothing on the face of the bond which indicates the particular "consideration" for which it was given. It purports to be an ordinary obligation to secure the payment of money, and is in the usual form ; nor is there any allegation in the bill in reference to the "consideration." The answer alleges that Simpson "was induced to make the bond and mortgage, not for the consideration of six thousand dollars, as in said bond stated, but for the consideration of a certificate purporting to entitle said Simpson to sixty shares of capital stock in said Institution ;" and then going into a detailed history of the transaction, alleges that the purchase of the stock by Simpson was induced by the false and fraudulent misrepresentations of the authorized agents of the said Company. There is also contained in the answer the formal allegation that the "bond and mortgage were fraudulently obtained from the said Simpson, and were given *without consideration* ;" but this allegation is coupled with the further statement that they were given for the purchase of a "*stock certificate.*"

The defence set up against the prayer for a foreclosure, has been considered by the counsel who argued the case for the respondent, under four distinct and independent heads, each of which, it was argued and insisted, appeared in the answer, and presented a substantive matter of defence.

The several grounds, as alleged, were as follows, viz : 1st. That the bond and mortgage sued upon were given to the Southern Life Insurance and Trust Company without any consideration ; 2d. " *Illegality of consideration,*" in this, that the bond and mortgage were given for a pretended sale of shares in the capital stock of the Southern Life Insurance and Trust Company ; 3d. That the bond and mortgage were given to the Southern Life Insurance and Trust Company upon the *false* and *fraudulent misrepresentations* of the authorized and accredited agent of the said Company, in regard to the solvency and prosperous condition of the affairs of the Company, and in regard to the value of its stock ; 4th. That the assignment of the bond and mortgage is void, and vests no interest in the assignee, as being in contravention of the inhibition contained in the sixth section of the charter of incorporation, which prohibits the assignment of such bonds and mortgages as should be given to secure the re-payment of *loans* which might be made out of the cash capital of the Company.   These are the several grounds of defence, as they were considered by the counsel in argument.   It now becomes our duty, *in limine*, to ascertain whether or not they legitimately arise in the consideration of the case.

In order to ascertain the *issues* upon which the parties contest their respective rights, in any particular case, in a Court of Equity, it is the duty of the Court to have reference as well to the allegations of the bill as to the *matters of fact* contained in the answer or plea ; and upon this data, and this alone, can they proceed to adjudicate those rights.   A party may, in good faith and with perfect sincerity, insist in *argument* upon a particular ground of defence, which, upon an examination of the whole answer, turns out to be *merely an inference of law*, deducible from the matters of fact therein stated.   Of this

character are we constrained to consider the first ground of defence argued by the counsel, viz: The "want of consideration." As a foundation for his argument, the counsel for respondent referred to that part of the answer in which the following language is used, viz: "For further answer, these defendants say that said bond and mortgage were fraudulently obtained from said Simpson, and were given *without consideration*, and that the said stock certificate was issued without authority of said charter, or any by-law passed in accordance with its provisions, but contrary to its express letter and spirit, by reason whereof the said Simpson, nor his heirs or representatives, could acquire no legal title to any interest in the capital stock of said Company, as these defendants are advised and believe." This is the only portion of the answer which contains the formal allegation that the bond and mortgage were given "*without consideration*," and in the connection in which the allegation is found, it can scarcely be seriously contended that it amounts to anything more than an *inference of law*, deducible from the accompanying statement of facts. It is very clear that the existence or non-existence of a consideration, is made to depend upon the result of the question, whether the "stock certificate" mentioned, (assuming that to have been the real consideration for the giving of the bond and mortgage,) was lawfully issued ; and hence it will be readily perceived that the question involved in this ground of defence, is one of *law*, and not of *fact*. Indeed, we would charitably hope that such was the view taken of this matter by the defendant, at the time that he solemnly swore to the facts set forth in his answer, for we can scarcely suppose that he *intended* to be understood as swearing in one breath to the *fact* that there was no consideration, and in the next that there was a consideration. By the common law, a defendant was not permit-

ted, (except perhaps under very special circumstances,) to file contradictory pleas ; and certainly much less will it be toleredat in a Court of Equity that a defendant should be permitted to set up in the same answer contradictory facts as a matter of substantive defence. It would be to encourage perjury in its worst and most dangerous form. This defence, when made at common law, is always the subject of a special plea, and it must be so pleaded as not to present a double issue.  In other words, it must contain simply the negation of a consideration, and anything beyond that, showing that the party defendant was only deceived or disappointed in the value of that which he relied upon as a consideration, changes the character of the plea from that of a " want," to *illegality* or *failure* of consideration. We are, then, fully of opinion that the first ground of defence assumed in the argument, does not arise out of the pleadings, and therefore no argument made on that head can have any influence in determining the rights of the parties.  The importance to the defendant of establishing this *first* head as a substantive ground of defence, grew out of the presumed advantage which it might give him in changing the onus of proof, under the operation of the 24th section of the Act of November 23, A. D. 1828, regulating judicial proceedings, (Thomp. Dig., 331, chap. 2, sec. 1, art. 4,) and which, although evidently intended for the government of Courts of law, seems, in the opinion delivered in the case of the Southern Life Insurance and Trust Company vs. Cole, (4 Florida Rep., 377,) to have been thought to be likewise applicable, by analogy, to Courts of Equity.  As to what may be the authority of that case upon the point, it is unnecessary for us to consider in this investigation.  We are disposed to dismiss it with the simple remark, that whenever the question may be fairly and fully presented how far a Court of Equity is permitted or

bound to adopt in its practice statutes affecting simply the *remedy*, and professedly enacted for the regulation of Courts of law, it will receive that calm and deliberate consideration which its importance may demand.

Having thus disposed of the first head, we now address ourselves to the three remaining ones, viz: " Illegality of consideration," " fraudulent representations," and the " invalidity of the assignment."

Our first inquiry will be to ascertain, from the *evidence* and *proofs* in the cause, whether any other consideration than that appearing on the face of the bond has been established. In the prosecution of this inquiry, we first refer to the bill, and from that reference we ascertain that there is no allegation touching the consideration, and consequently no interrogatory addressed to the defendant in reference thereto. All, therefore, that appears in the answer of the defendant touching the consideration, must be taken to be new and substantive matter, pleaded by way of *avoidance*, and consequently must be proved *aliunde ;* ˙for it is a well established principle of Equity practice that only such matters of fact set forth in the answer of the defendant as are clearly responsive to the allegations of the bill, will be considered as *evidence* in the cause. Matters of fact set up and insisted upon as a substantive defence, and being not responsive to the bill, will be required to be established by proof *aliunde*.

This is a principle of Equity practice, too universally recognised to require the citation of any authority for its support. Proceeding then upon this doctrine in our examination of the various matters set forth in the answer, we are constrained to say that the allegations contained in the answer, in reference to the consideration for which the bond and mortgage were given, afford no *evidence* of the facts alleged. We are next thrown upon the proofs which

were adduced at the final hearing of the cause, and after a strict and scrutinizing examination of the record, we are equally at a loss to discover even the semblance of any direct or positive evidence upon the subject, going to show a consideration for the giving of the bond and mortgage variant from that which their face import. The bond purports to be a simple money bond, and the deed of mortgage is of the usual form, containing no extraordinary or unusual covenants.

The counsel for the respondent, however, have argued with great ingenuity and zeal that there is contained in the record a body " of circumstantial evidence," which as conclusively supports the allegations in the answer, as would the production of the most direct and positive evidence. We readily recognise the position as a sound one, when invoked *as a general rule*, that in Equity as well as at law " a well connected train of circumstances, is as conclusive of the existence of a fact, as is the greatest array of positive evidence." But of equal authority and of no less applicability, is that other familiar rule of evidence, viz : that " the best evidence the nature of the case will admit of, must always be adduced." These are but general rules, and the former especially is not of universal application, for there are some matters of fact peculiarly susceptible of *positive* proof, whilst there are others which, from their very nature, and from the secrecy which invariably attend them can only be proved by *circumstanstial* evidence. In the application of the rule, it therefore becomes the part of wisdom always to have reference to the nature of the subject.

Now the subject under consideration in this investigation is, the true consideration for which an obligation, purporting to be an ordinary money bond, had been executed

and is, in our opinion amongst that class of subjects peculiarly susceptible of direct and positive proof.

Moreover the bond and mortgage before us are each attested by two witnesses, who may be persumed to have been cognizant of the matter in issue, and might have been required to testify on the subject had suitable efforts been made to obtain their testimony.

It may be that the witnesses are all dead or beyond the reach of the process of the Court.   But if such be the fact, there is no proof in the record of its existence, which if proved, would, according to all the well recognised principles regulating the admissibility of evidence, have opened a door for the introduction of the *circumstantial* evidence relied upon in the argument of Counsel. In addition to the result of our own examination of the record, it was frankly admitted by the Counsel that there was no *positive* proof upon the subject of the consideration of the bond, and hence they had to rely exclusively upon the weight of circumstances, to establish the several defences set forth in the answer of the defendant.  These circumstances, as we find them detailed in the brief which has been furnished us, and which were relied upon as tending to prove that the consideration for which the bond and mortgage had been given by the defendant's intestate Simpson, was a purchase of shares in the capital stock of the Southern Life Insurance and Trust Company are as follows, viz:

1. The fact that no other consideration (than what appears on the face of the bond) appears from the Books of the Bank or was known to its President or Cashier.

2. Copy of a resolution of the Board of Directors shortly prior to the date of the bond and mortgage, empowering Samuel L. Burritt to sell certain stock which had been surrendered, for bonds and mortgages.

3. Copy of a Circular issued about the same time, by the

bank urging the people of Middle and West Florida to take stock on those terms.

4. That it is stated by George Field, in his evidence in the record, that stock was sold to divers persons for bonds and mortgages, but he says nothing of such a sale of stock to Mr. Simpson.

5. The inability of the Bank to loan the money.

6. The indorsement of a *dividend* declared in his favor as a credit upon the bond.

7. The correspondence between the amount of the bond and the amount of the stock.

We have carefully considered, severally as well as collectively, the circumstances before enumerated. But after the maturest deliberation and with an anxious desire to accord to them all the weight to which they might be legitimately entitled, we are constrained to say, they have failed to produce in our minds that conviction which it is the legitimate office of evidence to effect. There is not that conclusiveness—that conviction growing out of a well connected train of circumstances, which will authorize us to say that, *from the evidence* in the record, the consideration of the bond is other than what it purports to have been. In a matter susceptible of proof, a court must not conjecture. This being the conclusion at which we have arrived, it results as a necessary consequence that neither of the three remaining heads of defence arise for our consideration, dependent as each of them is, upon the allegation in the answer, that the bond and mortgage were given for a purchase of shares in the capital stock of the Southern Life Insurance and Trust Company.

We are not disposed, nor indeed would it comport with judicial propriety, *unnecessarily* to undertake to discuss the very grave and important questions decided by this Court in the case of the Southern Life Insurance and

Trust Company vs. Lanier. Whenever any of those questions may properly present themselves, we doubt not but that they will receive from the Court, that patient, impartial, and independent examination, which their paramount importance may demand.

We have carefully examined the record in this cause, and failing to discover any error in the proceedings had in the Court below, it is our judgment that the decree be affirmed with costs.