ELBERT WHITFIELD, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. A new trial will not be granted when the testimony is sufficient to sustain the verdict, and no error of law appears to have been committed on the trial.

2. Arson may be proved by circumstantial evidence.

Writ of Error to the Criminal Court of Record for Orange county.

The facts of the case are stated in the opinion of the court.

*Foster & Gunby* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

MITCHELL, J.: The plaintiff in error was tried and convicted before the Criminal Court of Record of said county, November 15, 1888, upon a charge of arson. The defendant moved for a new trial, which motion was overruled, and the defendant was thereupon sentenced to the penitentiary for the term of seven years, whereupon he applied for and obtained a writ of error to this court.

The only error assigned is: "That it was error for the court to refuse to set aside the verdict and grant a new trial on the ground that the evidence did not warrant the verdict.

19

·of the jury, there being no evidence of the guilt of the prisoner."

The only question for us to decide is, was the evidence ·sufficient to convict the defendant upon?

As the case is an important one, and as the testimony is circumstantial, we give it in full.

The defendant was charged with burning the dwelling house of Charles Kline.

John A. Wood testifies: I know the defendant, and have known him intimately for nearly a year. On Sunday evening, the 5th of August, 18'8, he came home to Mrs. Banks in Chuluota, and said: Mr. Wood, did you know Mr. Kline's house was burned? me and Mattie (his wife) came by there and saw it. There was a good rifle there, and if I had known it I would have had it. On Wednesday I came to ·Orlando and saw some new goods in his house in Forest ·City for the first time on Tuesday. They are the goods I ·see now before me; about two weeks afterwards, I moved ·his goods to Chuluota. This was in Orange county, State of Florida.

A. A. Moseley testifies: I know the defendant. I live about half a mile from Kline's. I had charge of the house for Mr Kline in his absence, as his agent, and gave it in for assessment of taxes. I suppose the house was burned Friday night, the 3d of August.

The following question was, at this stage propounded to the witness: Did you ever see any of this furniture or these goods (the goods being shown to witness) in the house of Mr. Kline at any tine? Answer. Yes; I saw it there last June. I saw a rocking chair that was exactly like this one, and two wooden chairs just like these, also ·basket of linen and bed covers and blankets just like these showed me. These are either the goods or duplicates of them.

On cross examination this witness testified: I have not

JANUARY TERM, 1889.　　291

Whitfield vs. State of Florida—Opinion of Court.

been in the house since some time last June. I locked it up then, and these things were in it. I was by the house the week before the fire. I did not go inside the enclosure, but it looked like it was locked. I only went in front of it. I did not know of the fire, or go to the place until Monday, the 6th of August. Saw wagon track up to the corner of the fence, and tracks inside of the enclosure leading from the wagon track to the house and back several times. There were two sizes of tracks, and at first I thought two people had been there, but came to the conclusion that it was some one who had on odd shoes. The wagon seemed to have come from towards Chuluota and to have gone towards Forest City. About a year or more before the burning of the house I broke a chair like this (chair in hands of witness) and in the same place this is broken. I offered to pay Mr. Kline for it, but he refused to let me pay as he said the chair could be mended. This chair is mended, but I can't remember ever having seen it since it was mended, but I am certain that it was mended, and is the same chair. There were only two chairs like these shown me, and one rocker like this one in the house, and while I cannot swear to them positively, they are either the same or duplicates. I used to sleep in the house two or three times a week, and am familiar with the things.

Robert Williams testifies: I live near Forest City, and between six and seven o'clock on Saturday, the 4th of August, I saw the defendant pass my house with a single horse wagon loaded with furniture going towards his house in Forest City. I did not speak to him. Don't know whether this is the furniture or not, but saw a red chair like this one. On cross examination this witness testified: Did not know the furniture, and did not know the house was burned until I saw or heard it read from a paper several weeks afterwards;

am positive it was the morning of the 4th—Saturday morning; it was Mr. Wood's horse and wagon.

Annie Jenson testified: I am acquainted with the defendant, Whitfield, and on Saturday morning the 4th of August, was at his house in Forest City, and was staying with his wife. Whitfield was home between 5 and 6 o'clock that morning, and put a wagon load of furniture in his house. I left before breakfast. I am sure it was Saturday morning. I had been staying with his wife several days during his absence from home. He came home that morning.

Richard Savage testifies: I met Whitfield, the defendant, at or about the crossing of the Econlochatchie creek on Sunday afternoon, the 5th of August, with his wife going towards Chuluota. He asked me whose house it was over the creek from me, and I told him that it was Kline's, and he said that it was burned down. He and his wife had just come by and it was still burning. It was the first time I had heard of the fire.

John A. Wood recalled, testifies: I carried these things from the house occupied by Whitfield, the defendant, in Forest City. I never saw them until I saw them in Whitfield's house in Forest City. From Mrs. Banks' house in Chuluota to Forest City is about 22 miles, and Kline's house is about half way between the places. I was at Mrs. Banks' house in Chuluota on the evening of the 3d of August, and know that Whitfield left there about 9 o'clock with my horse and wagon for Forest City. The wagon was empty. Whitfield worked for me at $20 per month from April to August 1st, and lived in my house in Forest City. I paid him all I owed him.

On cross examination Wood testifies: I met him at Mrs. Banks' where I boarded. She also lived in my house. Yes, he, Whitfield, swore out a warrant against me for stealing, and I am now under indictment. I do not know

when the house was burned.  The first I heard of it the defendant told me on Sunday evening, the 6th of August. I have always been friendly to Whitfield, and have no unkind feelings toward him now.  I know that Whitfield did wear odd shoes about that time, one smaller than the other.

Fannie Banks for defendant testifies: I am acquainted with the defendant, Whitfield.  He is my son-in-law. He married my daughter.  Yes, I remember the Saturday morning of the 4th of August, Mr. Wood came to my house in Chuluota, with his wagon loaded with this furniture, now in court, and I said where is Whit.?  I've brought him them things I promised him.  Whitfield came out and said how much do you want for them.  Mr. Wood said $15.00.  I told Whitfield not to pay it.  He could go to Sanford and get new things for that.  But he said Mr. Wood owed him and he could not get his pay any other way.  Mr. Wood said he got the things from my sister, and he gave Whitfield an old pair of pants.  Whit. threw them to me, and in looking over them I saw where I had mended them for Charlie Kline, and said, Mr. Wood, these are Charlie Kline's pants.  He said, madam, do you mean to say I would steal?  I said no, it may be that me and Madaline sew so much alike that I am mistaken. Whit. bought the things.  I said to Mr. Wood that I wished he would give me the rocking chair.  I had one that was good enough to last me as long as I could live but he said he was not making presents now.  On the evening before, Mr. Wood left my house and said he was going to Forest City.  I got his supper for him and he left after dark.  When he came back on Saturday morning I said to Whitfield that Mr. Wood had not had time to go to Forest City.  Mr. Wood then let Whitfield have his horse and wagon and Whitfield left that evening, Saturday,

to take the things to Forest City. He came back late Sunday, and Mattie, his wife, was with him. He first told us the Kline house was burned. Mattie's bedstead was a light colored one, and that was the one that Mr. Wood brought to my house about two weeks after the burning of Kline's house. I know that Mr. Wood wore odd shoes.

Brower testifies: I helped move Whitfield's things from Forest City to Mrs. Banks' about two weeks after the fire. I moved one load and Mr. Wood moved one. This light bedstead that Mrs. Banks says was moved by Mr. Wood I moved that in my wagon for Whitfield. I mean about two weeks after the fire.

The defendant made his statement as follows: I did not burn Kline's house, but saw it in the afternoon of Sunday, the 5th of August, as I was coming by from Forest City with my wife; it was still on fire and I met Mr. Savage and asked him whose house it was. He told me it was Kline's. Now about these goods, I was working for Mr. John A. Wood at $20.00 per month, and could not get any settlement out of him, so I told him I would have to quit, and go to work where I could get my pay, for I had bought some land from my mother-in-law and she had to have her money. On the morning of August 4 Mr. Wood came to Mrs. Banks' where I was and brought the furniture shown in court here and sold it to me for $15.00. I took it on account because he could not pay me this money, and that evening late took his, Wood's, horse and wagon and took the things to my house in Forest City, arriving there about sunrise on the 5th, and not Saturday, as sworn to by the witnesses for the State, and did not go by Kline's house on my way to Forest City, but on my way back Sunday the 5th. Saw the house was burned, and still was smoking. My wife and I stopped there, and a short time afterwards I met,

JANUARY TERM, 1889. 295

Whitfield vs. State of Florida—Opinion of Court.

Mr. Savage and told him of it, and when we got home I told Mr. Wood and Mr. Banks of it.

In rebuttal, the State produced J. O. Fries, who testifies: I know Mrs. Fannie Banks, and know her reputation for truth in the neighborhood in which she resides. I was there in 1886 helping to take census and she acted so bad to me that I asked the people around there and they all said she was a very bad woman and a great liar. From her reputation I would not believe her on oath.

Edward Spearman testifies: I know Mrs. Fannie Banks. I know her reputation in the neighborhood to be bad. Her reputation is that she will let any man that comes along sleep with her. From that I would not believe her on oath.

It will readily be seen that the testimony, except that the house of Kline was burned, is entirely circumstantial, but cases of this character may, as well as any other, be made out by such testimony. This court held in Simpson's Admr. vs. Barnard, Adams & Co., 5 Fla., 539, that " a well connected train of circumstances is as conclusive of the existence of a fact as is the greatest array of positive evidence." This testimony conduces to show that on the day, following the burning of Kline's house the defendant was found in possession of a lot of furniture which belonged in said house. This, of itself, is not sufficient to raise the presumption that the defendant was the person who burned the house, even if he failed to satisfactorily account for his possession of such furniture, but it was a circumstance in the case—a very strong circumstance, but to take this circumstance alone it does not establish the guilt of the defendant, and for this reason the whole testimony must be looked to, and, all the circumstances of the case considered, and to then see if they establish such a chain as will convince the mind beyond all *reasonable* doubt that the defend-

ant is the man who burned Kline's house.    The house was burned, and, as we understand the testimony, the defendant on the day after the burning was found in possession of furniture that belonged to Kline, and that it was in the house a short time prior to the burning.    How does the defendant attempt to account for this furniture being in his possession?    By attempting to show that he purchased it from the witness, Wood, but in this he signally fails.    The testimony shows that the house must have been burned on the night of August 3d, 1888, Friday night, and that on this same night the defendant left Chuluota for Forest City in Wood's one-horse wagon, and that it is about 22 miles from Chuluota to Forest City, and· that Kline's house was about midway between the two places.    The next morning, Saturday, the 4th, the defendant is found, between 5 and 6 o'clock, at his home in Forest City with Wood's horse and wagon—the wagon loaded with furniture.    When the defendant left Chuluota the wagon was empty, but when he arrived at Forest City the next morning Kline's house had been burned and the furniture, or a part of it, which belonged in Kline's house, was found in possession of the defendant, and this it seems was before Wood knew anything about the furniture, as he says that the first time he saw it was on Wednesday after the fire.    There were wagon tracks to the corner of the fence near the enclosure when the house was burned, and the track appeared to have come from towards Chuluota, and to have gone towards Forest City ; these tracks came from the direction the defendant left at 9 o'clock on the night of the 3d, and they *went* in the direction of Forest City, where he was found at 5 or 6 o'clock the next morning.    There were foot prints—shoe tracks— from where the wagon was stopped near Kline's house to and from the house, the tracks being of different sizes, but seemed to have been made by the same person, and the evi-

dence shows that at about this time the defendant wore " odd " shoes, that is, one shoe of one size, and the other of a different size.

In about two weeks after the burning of the house, and after the defendant was found in possession of the furniture as aforesaid, he moved the same from his house at Forest City to Chuluota, the object for doing so not appearing, but it may have been for the purpose of concealing, or otherwise disposing of it, at a distance from his home, which would decrease the chances for his detection.

The first person that knew of the burning of Kline's house, so far as the testimony shows, was the defendant. He spoke of it at different times and at different places. He was in the vicinity of the place an Sunday, 5th of August. He said that there was a good rifle at Kline's house, and that if he had known it he would have had it. In this, however, he does not show how he knew the rifle was in the house, nor why, if he had known it, he would have had the rifle, but it does show that he had some knowledge as to what was in the house, and his not explaining how he obtained such knowledge is a strong circumstance against him.

The defendant, in his statement, says that he bought the furniture from Wood, and that he carried it to Forest City on August 5th, but in this he is flatly contradicted by Annie Jenson, who swears that the defendant arrived at Forest City between 5 and 6 o'clock Saturday morning, August 4th, with the load of furniture, and her testimony is corroborated by that of Robert Williams. And his attempting to show that he carried the furniture to his home on a day other than the true one is another strong circumstance against the defendant.

And now, taking these circumstances in connection with other minor circumstances in the case, is not the guilt of

the defendant shown beyond all *reasonable* doubt? The jury by whom he was convicted thought so, and we see no reason for disturbing their verdict.

The judgment is affirmed.