THE ATCHISON, TOPEKA & SANTA FE RAILWAY COM-
PANY V. JOHN B. COLLIATI *et ux.*

No. 14,820   (88 Pac. 534.)

SYLLABUS BY THE COURT.

1. EVIDENCE—*Circumstantial—Credibility.* In civil as well as
criminal cases a fact may be established by circumstantial
evidence, and a jury may accept such evidence and base a
finding or verdict thereon although opposed by the direct and
positive testimony of witnesses.

2. RAILROADS—*Injury to Employee—Negligence Properly In-
ferred.* In the present case it is held that the circumstantial
evidence justified the jury in finding that the hostler of an
engine negligently moved it and killed his helper, although
the testimony of the hostler, which was the only direct testi-
mony as to the act, was to the contrary.

Error from Reno district court; PETER J. GALLE,
judge. Opinion filed January 5, 1907. Affirmed.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,*
for plaintiff in error.

*W. H. Lewis,* and *Prigg & Williams,* for defendants
in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: Alexander Colliati was killed
while acting as helper for an engine hostler named
Swan, an employee of the Atchison, Topeka & Santa
Fe Railway Company, and this action was brought
upon the theory that his death was the result of Swan's
negligence. The railway company provided an ash-pit
over which a track was laid and upon which engines
were placed so that they might be cleaned of ashes.
It is the duty of the hostler to operate engines in mov-
ing them over the ash-pit, and of the helper to go
under the engine and hoe out the ashes and shake
down the fire-box. It was alleged, and proof was of-
fered tending to show, that about nine o'clock at night
Swan was ordered to take an engine to the ash-pit to

be cleaned, which he proceeded to do, and Colliati went along to assist in the work. Swan was in charge of the engine, but was subject to the signals of Colliati in locating the engine over the ash-pit. When the engine was driven over the ash-pit Colliati found that it was not located where there was room for the ashes and directed Swan to back the engine about two feet. Swan moved the engine, waited a short time, and, not hearing from Colliati, got down and found that Colliati's lantern was out and that he was pinned between a drive-rod, or bar, and a step on the side of the engine, and had evidently been caught there by a forward movement of the engine. Instead of trying to release him Swan ran to the roundhouse, about three hundred feet away, and called for help, and when he returned with assistance they backed the engine a little and released Colliati's body, and it was found that he was dead.

The theory of the plaintiffs was that after the signal was given and the engine had been backed two feet. as Colliati had directed, he started to look or go under the engine, believing that Swan would not move the engine until again directed by him, and that Swan, becoming rattled, and possibly thinking that he had backed too far, moved the engine forward without warning from Colliati, catching him between the side-bar and the step. The side-bar was across his left shoulder and back, and it pressed him down against the step in a space of from four to six inches when the bar was at the lowest part of the revolution, and in such a way that the breath was squeezed out of him. No bones were broken, and there was testimony that he was not dead when Swan found him and that if the pressure had been sufficient to cause the heart to cease beating there probably would have been broken bones. He was dead when he was finally released from the position, which was from about five to seven minutes after Swan discovered that he was caught. There

was testimony to the effect that one squeezed as Colliati was would live from three to five minutes.

It is claimed that Swan negligently moved the engine forward without a signal when Colliati was in a place of danger; that he was negligent, too, in not backing the engine and releasing Colliati's body when he found that he was caught; and also that he negligently operated the injector and blower, making such a noise that signals or directions could not be heard. Swan, the only witness who gave direct testimony of the occurrence, stated that when he was directed to back the engine about two feet Colliati was in a place of safety, and that the engine was not afterward moved. It was also stated that the reason Swan did not immediately reverse the engine and release Colliati was that if he had backed the engine and relieved the pressure on Colliati's body when there was no one to hold him up he probably would have fallen upon the track and been crushed by the wheels, and there is a claim that the impulse to run for help was the natural one and that the course adopted by Swan was as safe as to have attempted the rescue unaided. The case was submitted to a jury, who found against the railway company, and the following among other findings of fact were made upon disputed questions:

"(6)  Ques. Did Swan know that anything had happened to deceased until he got off the engine and went to south side of the ash-pit? Ans. We think he did.

"(7)  Q. Was Colliati dead when Swan found him? A. No."

"(16)  Q. Was Colliati's head stuck between the drive wheels over the step? A. Yes.

"(17)  Q. Was he crushed down on the step by the side-rod as the engine backed? A. No."

"(19)  Q. Could one see under the rails and stringers on the south side of the ash-pit? A. No."

"(45)  Q. Was Colliati in a place of safety when he directed Swan to back up his engine à little? A. Yes."

"(48)  Q. Was the engine over the ash-pit moved a second time after Colliati directed Swan to back the same up a little? A. Yes.

"(49) Q. If you answer the last question in the affirmative, was the second movement of said engine made without directions from Colliati? A. Yes.

"(50) Q. If you answer the 48th question in the affirmative, then was Colliati in a position of safety at the time of the second movement of the said engine? A. No.

"(51) Q. If you answer the 48th question in the affirmative, was it the second movement of said engine that injured Colliati? A. Yes.

"(52) Q. Did the injury to Colliati consist of having the breath pressed out of him so that he could not breathe and from which he died? A. Yes.

"(53) Q. If Colliati had been released from the position on the step of said engine in which Swan found him, at the time that Swan found him, could he have been saved? A. We think so."

The contention is that the evidence in the case did not warrant the court in submitting questions 48, 49, 50 and 51, nor the jury in making the answers to those questions, and, further, that it did not show any negligence by the company. It is especially insisted that there was no evidence of a second movement of the engine after the direction to back was given, nor that Colliati was injured by a forward movement.

If no testimony should be considered except that of Swan, who was the only one within view when the accident occurred, there would be strong reasons for the contention of the railway company. The case, however, does not rest alone upon the positive testimony of Swan. There are circumstances in the evidence strongly tending to show that Colliati was not injured by a backward movement of the engine, but must have been caught and killed by a forward movement, and circumstantial evidence sometimes outweighs positive testimony. Men have been convicted of the gravest offenses upon circumstantial evidence, and it is equally as cogent and effective in a civil case. Swan asserts positively that he backed the engine as directed; that when he started to do so Colliati was in a place of safety, and that the engine was not after-

ward moved. But the jury may not have believed him, and the physical facts and existing circumstances were such that the jury were justified in finding that there was a second movement of the engine. The fact that it was necessary to back the engine in order to release Colliati's body tells a convincing story—one which is incompatible with the testimony of Swan. No other conclusion can be drawn from the circumstances than that there was a second and forward movement of the engine. Swan admits that but one signal was given and that Colliati was then in a place of safety, and the forward movement was necessarily made without a signal. It was a reasonable inference that after the backward movement Colliati should feel safe in approaching the engine for the purpose of cleaning it and that he should believe that it would not be moved again until he so directed. The jury had a right to infer from all the circumstances that Swan moved the engine forward without direction or warning, and that Colliati lost his life by this negligent act. Of course there can be no recovery without proof of negligence, but direct proof is not essential. It has been held that a verdict may rest on circumstantial evidence alone. (*Culbertson v. Hill*, 87 Mo. 553.) If within the opinion of the jury the circumstantial evidence was more convincing than the testimony of Swan, they were justified in accepting it and basing their findings and verdict upon it. In *Hill v. Scott*, 38 Mo. App. 370, Judge Thompson said:

"While negligence must be proven, it may be inferred, when the thing causing an accident is in the management of the defendant or his servants, and the accident is such as in the ordinary course of matters does not happen, if those having the management use proper care." (Syllabus.)

In the same case the effect of positive testimony was considered, and it was held that a jury are not bound to credit the testimony of unimpeached witnesses, even though not denied by any other witness, if there be

Meade v. Topeka.

circumstantial evidence inconsistent with such testimony. In *Coles v. Perry,* 7 Tex. 109, it was said:

"There are cases, every day occurring, where the testimony of a witness testifying positively to an asserted fact as transpiring within his view, and honestly testifying too, is disproved and falsified by proof of facts and circumstances known to exist, and the existence of which is wholly incompatible with the fact deposed to. In such cases, circumstantial evidence outweighs positive testimony." (Page 168. See, also, *Simpson's Adm'r v. Barnard, Adams & Co.,* 5 Fla. 528; 17 Cyc. 817.)

There is a contention that Colliati did not choose the safest way of approaching the engine for the purpose of cleaning it, but under the circumstances whether he exercised due care in the performance of his duty was a fair question for the jury.

The judgment is affirmed.