BINGHAM MINES CO. et al. v. ALLSOP et al.

No. 3668.   Decided December 29, 1921.   (203 Pac. 644.)

1. MASTER AND SERVANT—FINDINGS NOT ESSENTIAL TO VALID AWARD UNDER COMPENSATION ACT. It is advisable that the Industrial Commission make findings of the ultimate facts in a proceeding under the Workmen's Compensation Act, but such findings are not essential to a valid award.[1]

2. MASTER AND SERVANT—EXISTENCE OF SUBSTANTIAL EVIDENCE SUPPORTING AWARD UNDER COMPENSATION ACT QUESTION OF LAW. Whether there is any substantial evidence to support an award of compensation under the Workmen's Compensation Act is a question of law, and to ascertain whether there is some substantial evidence supporting the award is the only purpose of review.[2]

3. MASTER AND SERVANT—COMPENSABLE INJURY MUST BE PROVED BY CLAIMANT. In a proceeding under Workmen's Compensation Act to obtain compensation for death of servant, it is incumbent upon the beneficiaries to prove that death resulted

from an accident arising out of and in the course of deceased's employment.

4.  MASTER AND SERVANT—FINDINGS ON EVIDENCE CREATING—"PROBA-BILITY" NOT REVIEWABLE UNDER COMPENSATION ACT. If there is any substantial evidence sustaining conclusions reached by the Industrial Commission in a proceeding under the Work-men's Compensation Act, though it be slight, and though it may seem unsatisfactory to the Supreme and district courts, the award made must stand, and in this connection a finding of the Commission may properly rest upon "probability," which is created when there is more evidence in favor of its existence than against it [3] (citing Words and Phrases, First and Second Series, Probability).

5.  MASTER AND SERVANT—EVIDENCE HELD TO· SHOW COMPENSABLE INJURY BY ELECTRIC SHOCK. In a proceeding under Workmen's Compensation Act to obtain compensation for death of a serv-ant evidence *held* sufficient to sustain a finding of the Indus-trial Commission that death in the tunnel of a mine resulted from coming in contact with a charged electric wire while de-ceased was at work in the course of his employment.

Appeal from District Court, Third District, Salt Lake County; *P. C. Evans*, Judge.

Proceeding by Mabel Allsop and others under the Work-men's Compensation Act to obtain compensation for the death of Samuel Francis Allsop, husband and father, op-posed by the Bingham Mines Company and others. From an award of compensation, which was affirmed by the district court, the defendants appeal.

---

[1] *Geo. A. Lowe Co.* v. *Ind. Com.*, 56 Utah 519, 190 Pac. 934.

[2] *Ind. Com. of Utah* v. *Evans*, 52 Utah 394, 174 Pac. 825; *Gar-field Smelting Co.* v. *Ind. Com. of Utah*, 53 Utah 133, 178 Pac. 57; *Geo. A. Lowe Co.* v. *Ind. Com. of Utah*, 56 Utah 519, 190 Pac. 934; *Ind. Com. of Utah* v. *State Road Com.*, 56 Utah 252, 190 Pac. 544; *McVicar* v. *Ind. Com. of Utah*, 56 Utah 342, 191 Pac. 1089; *Var-oukas* v. *Ind. Com.*, 56 Utah 574, 191 Pac. 1091; *Utah Fuel Co.* v. *Ind. Com. of Utah*, 57 Utah 246, 194 Pac. 122; *Littsos* v. *Ind. Com. of Utah*, 57 Utah 259, 194 Pac. 338.

[3] *McVicar* v. *Ind. Com. of Utah*, 56 Utah 342, 191 Pac. 1089.

AFFIRMED.

*Straup, Nibley & Leatherwood,* of Salt Lake City, for appellants.

*Willard Hanson,* of Salt Lake City, for respondents.

WEBER, J.

On October 26,·1917, Samuel Francis Állsop died in a mine. tunnel of the Bingham Mines Company, at Lark, Utah, while in the employ of that company. He left surviving him a wife and two minor children. Application was made to the Industrial Commission for compensation, claiming that Allsop was killed by an accident arising out of and in the course of his employment by the Bingham Mines Company. Upon a hearing the Commission found that Allsop came to his death by reason of an accident in the mine of the Bingham Mines Company, and compensation was awarded in the sum of $4,500. On writ of review the record was certified to the district court, and on such review the award was affirmed, the court finding from the evidence that had been adduced before the Commission that the death of deceased was caused by an electric shock accidentally received by him while at work in the mine in the course of his employment, and that the finding of the Commission that the deceased came to his death by reason of an accident arising out of and in the course of his employment was sustained by the evidence. From a judgment entered by the district court plaintiffs appeal.

The first assignment of error urged by appellants raised the question of whether the award can stand, since the Commission failed to make a finding as to the cause of death or what, if any, accident was sustained by the deceased,· or, in other words, whether the mere conclusion stated by· the Commission, that death was caused by reason of an accident arising out of and in the course of the employment, was sufficient to sustain the award.

In *Geo. A. Lowe Co. et al.* v. *Industrial Com.*, 56 Utah 519, 190 Pac. 934, this court held findings of fact by the Commission not legally essential to a valid award. That language was not intended as mere dictum. We have repeatedly suggested to the Commission that it is advisable to make findings of the ultimate facts in each case, but we have never held, and do not now hold, that such findings are essential to a valid award.

Appellants insist that there is no competent, substantial evidence in the record that the deceased had sustained any personal injury by accident arising out of and in the course of his employment, and that there is no competent, substantial evidence that he came in contact with an electric wire in the tunnel and suffered death from an electric shock. As stated by appellants, the question whether there is any substantial evidence to support an award is a question of law and to ascertain whether there is some substantial evidence supporting the award is the only purpose of a review in this court. *Ind. Com. of Utah* v. *Evans,* 52 Utah 394, 174 Pac. 825; *Garfield Smelting Co.* v. *Ind. Com. of Utah,* 53 Utah 133, 178 Pac. 57; *Geo. A. Lowe Co.* v. *Ind. Com. of Utah,* 56 Utah 519, 190 Pac. 934; *State Road Com.* v. *Ind. Com.,* 56 Utah 252, 190 Pac. 544; *McVicar* v. *Ind. Com. of Utah,* 56 Utah 342, 191 Pac. 1089; *Varoukas* v. *Ind. Com.,* 56 Utah 574, 191 Pac. 1091; *Utah Fuel Co.* v. *Ind. Com. of Utah,* 57 Utah 246, 194 Pac. 122; *Littsos* v. *Ind. Com. of Utah,* 57 Utah 259, 194 Pac. 338. It was incumbent upon the beneficiaries to prove that the death resulted from an accident arising out of and in the course of deceased's employment. If, however, there is any substantial evidence sustaining the conclusion reached by the Commission, though it be slight and though it may seem unsatisfactory to us, the award made must stand. As stated in *McVicar* v. *Ind. Com.,* supra, the Commission's conclusions are like the verdict of a jury, and will not be interfered with by this court when supported by some substantial evidence. The same rule is applicable in the district court upon its review of the evidence. Appellants insist that "a finding under the Work-

men's Compensation Act [Comp. Laws 1917, §§ 3061-3165]
cannot rest upon mere conjecture, probability, or pos-
sibility." With the elimination of the word "prob-      **3, 4**
ability" the quoted statement is unobjectionable and
meets with our approval. However, there can be no doubt
about the proposition that a finding of the Commission may
properly rest upon probabilities. The word "probable" is
defined in Bouvier's Law Dictionary, vol. 3, page 2728, as,
"having the appearance of truth; appearing to be founded
in reason." Courts have defined "probable" as meaning,
"Having more evidence for than against" (3 Words and
Phrases, Second Series, 1223) and, "A probability of the ex-
istence of a thing is created when there is more evidence in
favor of its existence than against it" (6 Words and Phrases,
5617).

The concrete question in this case, therefore, is whether
the evidence indicates that the deceased probably came in
contact with the electric wiring in a mine tunnel, and
whether the resulting shock caused or contributed to his
death. The deceased was a mine foreman. On the day of his
death he went to work at about 8 o'clock in the morning, and
did his work as usual. At 1:30 p. m. he ate his lunch. His
death occurred at about 3 o'clock. At about that time he
was in the tunnel and gave orders to one of the miners to
attend to some duty, and from five to seven minutes after
that he was found in a dying condition on the left-hand side
of the mine tunnel. A live electric wire was on the right-
hand side of the tunnel. The wire carried about 450 volts.
Ore was being taken out of different raises, loaded into cars
on a track in the tunnel. At the place where Allsop was
found, and where he died, the tunnel was about 6 feet 5
inches wide, and about 6 feet 5 inches high. The track was
laid about the center of the tunnel. The distance from the
top of the rail to the electric wire was 6 feet 2 inches so that
the deceased, who was 5 feet 9 inches in height, could not
come in contact with it by accident unless he stood on some-
thing or unless he raised his hand or carried something in
his hand which would extend above his head. Dr. Odell ar-
rived at the scene of the accident a few minutes after All-

sop's death.  He had known deceased for three or four years, but had never treated him, in his office or elsewhere, and so far as he knew deceased had never shown any symptoms or indication of inability to work.  Dr. Odell testified that when he found the deceased his throat and mouth were filled with saliva and ejected food.  He further testified as follows:

"If the current went through the respiratory organs it would cause a sort of strangulation.  It would produce the very effect that I found in this man's throat and mouth.  His throat and nose were full of blood.  That condition may be accounted for by his having come in contact with the wire.  That is not the only way, however, it could have been produced.  It could have been produced by his receiving a blow on the back of his head.  However, there was no evidence of his having received such a blow. If his head came in contact with the wire the condition in which I found him could have been produced as the result of the electric shock."

It having been suggested that the deceased died from over-exertion, Dr. Odell testified:

"When a man dies from overexertion you would expect him before that to be failing somewhat.  You would not expect him to be performing his usual work and to appear to be sound and rugged. You would expect him to be coming in occasionally to the mine doctor for treatment.  This man had never interviewed me for anything.  He appeared to be a sound, rugged man.  I would not have expected him to die of overexertion, when he went into the mine."

When asked whether it was probable or possible that death could have been produced by coming in contact with an electric wire, Dr. Odell answered in the affirmative.  After eliminating everything as the cause of death except electricity, Dr. Odell said that undoubtedly Allsop's death could have been caused by electricity.

Other testimony produced at the hearing tended to strengthen the probability of death from electric shock.  On the thumb of the deceased was found a burn or mark described as a "small round dark-edged scar, one-eighth inch in diameter with white center on back of right thumb midway between first and second phalanx."  Dr. Langenbacker said that in his opinion the scar or blister on the thumb did not describe an electric burn, while Dr. Anderson, referring

to the above description of the mark on the thumb, pronounced it "a very apt description of an electric burn." He further said that a shock sufficient to cause death might only show a blister on the skin. Dr. Anderson also testified that such a description as that contained in the autopsy report with reference to the scar on the thumb would be a perfect description of a powder burn, and that powder burns and electric burns are very much alike in appearance. However, the record does not contain the slightest indication that Allsop had suffered a powder burn. It was not, however, necessary for the Commission, in order to arrive at the conclusion that death resulted from electric shock, to find that there was some external sign or mark. Dr. Odell testified that in this very tunnel he treated a young man for electric shock who had no mark upon him, and that the young man would have died had he not received prompt treatment. Of course, if he had died his body would not have had any marks or burns indicating the cause of death. Other physicians testified that they had read of cases in the books where death had been caused by electric shock without leaving any burns, blisters, or marks.

According to the evidence, viewed, as we must consider it, in the light most favorable to the applicants for compensation, Allsop did not die from overexertion, and did not die from any natural cause. What, then, was the probable cause of death? Is it a fair inference to say that death was caused by an external force, and if that be the only inference could that force have been anything save an electric shock? The dead body was found in the tunnel, and near it a dangerous and deadly instrumentality. Exclude all other causes than electricity, and such exclusion is clearly justified by the evidence, and what is probable? What could be, not what necessarily would be, a fair inference from the circumstantial evidence? In *Wasson Coal Co.* v. *Ind. Com.*, 296 Ill. 217, 129 N. E. 786, the facts, in many respects, were similar to the facts in the instant case. In the *Wasson Case* a miner named Smith died suddenly in a mine entry in the vicinity of his working place. No one saw what caused his death. There

was no burn on the body. Smith had been sick with the "flu," and shortly before his death complained of feeling bad, and said he felt dizzy. In concluding the opinion, it was said by the court:

"No autopsy was held, and it may be admitted that the proof does not show with absolute certainty just what caused the death. The undisputed .fact remains that Smith did suddenly die from some cause. There was at the place of his sudden death and within easy contact by him an electric wire carrying a current which is not disputed to have been of sufficient voltage to cause death. We have above stated the substance of the testimony relating to the effects of 'flu' and the possibility of sudden death resulting from it. To our minds that death resulted from that cause is much more remote and less probable than that it resulted from deceased's contact with the electric wire. We do not think it can be said the two views are equally compatible with the evidence. The cause of death need not be shown by positive and direct testimony, but it is sufficiently shown if the facts and circumstances proved are such that on the whole evidence the reasonable inference to be drawn is that it arose out of the employment. *Smith-Lohr Coal Co.* v. *Industrial Co.*, 286 Ill. 34. It has been repeatedly held that we cannot weigh the evidence and determine upon which side it preponderates, but it seems to us to require more conjecture and speculation to say from the testimony that the death did not result from electrocution than to say it was so caused."

We cannot say that as a matter of law there was before the Commission no substantial evidence from which it could be fairly inferred that the death of Allsop was probably the result of an electric shock. The judgment is therefore approved and affirmed, with costs.

CORFMAN, C. J., and GIDEON, THURMAN, and FRICK, JJ., concur.