No. 29,528.

KATIE SUPICA et al., *Appellees*, v. ARMOUR & COMPANY, *Appellant*.

(293 Pac. 483.)

Opinion filed December 6, 1930.

*Edwin S. McAnany, Maurice L. Alden, Thomas M. Van Cleave,* all of Kansas City, and *G. R. Herr,* of Chicago, Ill., for the appellant.

*George H. West, P. W. Croker* and *S. M. Terbovich,* all of Kansas City, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: Joseph Supica, an employee of Armour & Company, was killed on May 22, 1929, and compensation was awarded to his wife in the sum of $2,000, payable at the rate of $9 per week, and also funeral benefits to the amount of $150, and $2,000 to his minor children payable in like manner. No question was raised that the parties were within and governed by the compensation law, nor as to compliance with the preliminary steps essential to a recovery of compensation, if any such liability existed. The only question in the appeal is, Did the death of Supica result from an accident arising out of and in the course of his employment?

Upon a hearing before the compensation commissioner it was

shown that Supica was engaged as a watchman on the plant at an average weekly wage of $30. He was also given a special police officer's commission with the powers of a special policeman. In a book of instructions issued by the defendant it is required that watchmen police shall faithfully patrol their respective posts while on duty, observe everything that takes place within sight and hearing and diligently preserve order and property; that they shall receive, transmit and obey all orders from their commanding officers; that they shall leave their beats only when necessary in the performance of duty or when properly relieved; further, that their first and most important duty as police watchmen and firemen is to be on the lookout for fires and to see that every precaution is taken to guard against them; that in case of fire they are to turn in an alarm immediately from the nearest fire post, and not take chances in putting the fire out until the alarm is given, except in cases where the blaze may be extinguished by putting their foot upon it or by some other simple means, that they shall then blow a whistle and yell "fire" to attract attention of other police watchmen or employees who would come to their assistance and aid in using the fire apparatus.

It appears that as the watchman passed around over the property he was to ring bells at certain periods; that he had rung a bell within the building at 12:42 a. m. and that he was killed at or about five minutes to one o'clock. There were two rows of buildings in the plant and a train shed about 300 feet long between these buildings over the loading tracks. He was seen upon the roof of this train shed, a part of the plant, at the time of the accident, by a fellow workman who testified that the watchman was using his flash light. The witness saw a light flash, then heard a cracking noise and saw Supica fall through the roof, forty to fifty feet below. There were no bells on this roof nor any place outside of the buildings in the plant. The company insist that the watchman had no business out there, that he may have gone there for purposes of his own, and that therefore it cannot be held, in the absence of direct evidence, that he was acting within the course of his employment. Whether the watchman was acting outside of the duties for which he was employed when the accident occurred, or whether he was acting within the scope of his usual duties and thus within the course of his employment, is the only question discussed by the parties.

It is conceded that the burden of proof to establish the fact was

on the claimant. There was little direct proof on the subject, and defendant insists that it was just as plausible a theory that he was acting for himself as that he was acting for his employer. The claimant was not confined to direct evidence; but like other questions of fact, circumstantial evidence may be received as well as direct, and if the direct and that which was circumstantial together warrant a reasonable inference that he was acting within the scope of his duties, it is enough to sustain the finding of the trial court. Under our decisions it is not necessary in a civil action like this one that circumstantial evidence should rise to that degree of certainty which will exclude every other reasonable conclusion. (*Railway Co. v. Wood*, 66 Kan. 613, 72 Pac. 215; *Railway Co. v. Colliati*, 75 Kan. 56, 88 Pac. 534; *Hashman v. Gas Co.*, 83 Kan. 328, 111 Pac. 468; *Broseghini v. Coal Co.*, 92 Kan. 113, 139 Pac. 1025; *Watkins v. Harper County*, 95 Kan. 166, 137 Pac. 822; *Mayeur v. Mining Co.*, 106 Kan. 123, 186 Pac. 1035; *Lane v. Insurance Co.*, 113 Kan. 365, 214 Pac. 92.) The watchman was at the plant when he was killed and apparently making an inspection of defendant's property. It was his duty to watch over the properties of the company, one of the rules of which was that the watchman should "faithfully patrol their respective posts while on duty, observing everything that takes place, within sight and hearing, and diligently preserve order and property," and should leave his beat only when "necessary in the performance of duty or when properly relieved." He was making his rounds and had rung a bell thirteen minutes before the accident and was on his way back when he went upon the deck of the train shed. It was incumbent on him to ring another bell at one o'clock, but five minutes before that time he fell. Defendant says that there was no bell to ring within 150 feet of the place from which he fell, but the ringing of bells was only a small part of his duties, probably required in order to disclose to officers that the watchman was awake and was guarding the property against intruders and also against fire. He was not required to stay on a beaten path, but the rules admonished him to observe everything that took place within sight and hearing and to diligently preserve the property. To perform the required duties he could not follow a beaten path, as what he saw and heard in different parts of the plant would naturally take him off of any regular route. He had some discretion in determining the best method of protecting the employer's prop-

erty. The night superintendent of defendant testified that the watchman should not have deviated from his route by going out on the train shed, that his duty was to ring bells, but later, when asked whether he had no other duty or discretion, said: "Oh, yes; he had to keep his eyes peeled to see what was going on on his route." Then in answer to a question: "Supposing he saw a person who acted suspicious or a noise sounding suspicious, was he at liberty to go and investigate it?" Witness answered, "To a certain extent, he was." The printed code of instructions, however, was more specific and, as we have seen, required him to observe everything within sight or hearing, and to do what was necessary to preserve property and order. So far as the matter of following these beats was concerned, watchmen were to leave their beats only when necessary in the performance of their duties or when relieved. Under these rules, if a watchman saw or heard anything that seemed to him to require investigation it was his duty to investigate and to do what was reasonably necessary for the protection of defendant's property.

Was the inference of the commissioner and of the trial court that the injury to the watchman arose out of and occurred in the course of his employment justified? It appears to us that the testimony of the eyewitness together with the circumstances mentioned were sufficient to justify that inference. In *Heileman Brewing Co. v. Shaw*, 161 Wis. 443, a workman whose duties took him to all parts of the brewery was found between eight and nine o'clock lying unconscious with bruises on his head and shoulders, on the basement floor beneath a guarded temporary opening in the floor above, and he died the following morning. Findings were made by the commission to the effect that his death was caused by accidental injury sustained while he was performing services growing out of and incidental to his employment. The court said:

"There is evidence to support the inference that he on Sunday evenings usually went to the part of the building where he fell, and that at times on Sunday evening he performed services in any part of the building. Under the circumstances it cannot be said that the commission's finding that decedent was injured in the course of his employment is wholly unsupported by the evidence. The facts and circumstances of the case amply support the conclusion of fact that decedent accidentally sustained a personal injury which caused his death and that it was incidental to his employment." (p. 445.)

See, also, *Cranney's Case*, 232 Mass. 149; *W. R. Rideout Co. v. Pillsbury*, 173 Cal. 132; *Bryant, Adm'x, v. Fissell*, 84 N. J. L. 72; *Manziano v. Public Service Gas Co.*, 92 N. J. L. 322.

The shortness of the time between the ringing of the last bell by the decedent and the time of the accident when he was on his way back from the top of the building, the fact that he was operating on the property of the defendant at the time of the accident and flashing his light, and apparently making an investigation of defendant's premises, warranted the finding of the trial court sustaining the award.

The judgment is affirmed.