No. 33,554

CHARLES M. HARDWELL, *Appellee*, v. ST. LOUIS SMELTING AND REFINING COMPANY, *Appellant*.

(73 P. 2d 1120)

Opinion filed December 11, 1937.

*Al F. Williams, Don H. Elleman* and *Paul H. Elleman,* all of Columbus, for the appellant.

*Charles Stephens* and *Jerome Harman,* both of Columbus, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This is a workmen's compensation case. The commissioner denied the claim and the workman appealed. The district court found claimant was totally disabled and that the duration of his disability was problematical. It is from this finding and award that respondent, a self-insurer, appeals.

The sole contention on appeal is that there was no substantial evidence to support the finding the workman suffered an accidental injury, or if he suffered such injury, that disability resulted therefrom. Respondent concedes this court is concerned only with evidence which supports or tends to support the findings of the trial court, and that our jurisdiction is restricted solely to questions of law. It contends, however, the question of whether the findings and award are supported by substantial competent evidence is a question of law. That such contention is correct is conceded by the workman. There is no objection to the competency of evidence offered. Was it substantial?

The workman was employed in respondent's lead and zinc mines in Cherokee county. In his written claim he fixed the date of the accident as July 23, 1936, but on the hearing it was placed one week later, or on July 30. If the trial court believed, and it did, that the workman was actually injured as a result of an accident growing out of and in the course of employment, the date in the instant case becomes immaterial. He claimed he suffered an injury to his right side when he slipped on some wet boards in an attempt to move a boulder weighing about 600 pounds and three or four feet in diameter. The hearing before the commissioner was held on November 20, 1936. Two lay and two medical witnesses testified in his behalf. The only direct testimony of the fact an accident occurred was adduced by the workman. No other person was in the immediate vicinity of the accident. One of the lay witnesses was his wife, who testified concerning his previous good health and his condition and conduct as she observed it following the alleged accident. The other lay witness was a brother-in-law of the workman, who testified in substance: At a later period he helped the workman clean out his well; the workman made exclamations of pain with reference to his side and said his side was bothering him and he would have to quit; the workman had shoveled some sludge for another employer during the month of August; he did not appear able to really do a day's work; he would hold his hand on his side like this (indicating) ; he didn't fill his shovel as the other boys did; he had to sit down part of the time; he said his side was hurting; none of the workers on this shoveling job worked constantly, but all of them, as well as claimant, took rest periods.

Doctor Brookhart was one of the witnesses called by the workman. His testimony pertained to an examination made on September 5, 1936. He testified in part:

"I examined the region where he complained of pain. I found rigidity of the muscles over the right side, over the region of the liver and stomach.

"Q. Did you reach a conclusion of your own, without regard to what he said, from this rigidity of the muscles there, as to whether or not there was an abnormal condition there? A. Yes, sir.

"Q. What was your opinion? A. My opinion was that he had some irritation in the abdominal cavity in the region of the liver and stomach."

Doctor Brookhart was then asked some hypothetical questions, to which the record discloses no objection. The questions were based on a chronological development of the evidence offered on behalf of the workman. The questions and answers were:

"Q. But assuming these facts are true; that sometime late in July, before that time, he had been able to do heavy manual labor and was rather an unusually strong man and a good shoveler, shoveling lead and zinc ore into cans and pushing them down some distance to the shaft and received his pay by the can, loading and moving down to the shaft from something like fifty to sixty cans a common shift, and on this particular day late in July he was prying on a boulder, lárge boulder, which he described as being three feet through and weighing 600 pounds, and he was prying on that boulder to get it off of some boards when he slipped and fell on his right side on the boards and some small boulders there. Immediately he suffered pain and felt faint and that was followed by nausea and sickness of the stomach. He remained in there about another half hour, this occurring about 3:30, and four o'clock was quitting time, and he went out at quitting time at the time they pulled the men up and when not pulling ore, and got in his car and rode home, still feeling fainty and sick at his stomach, and when he got home he ate a little stewed tomatoes and drank some coffee, at least part of a cup of coffee, and a little bread, and then sat down in a rocker and fainted away. I don't know how long he was in that condition, but anyway, after he came to himself he got on the bed and vomited some more there, some of it on the floor and some in the pan, and it showed a little blood. He suffered this pain for several days. We will say this occurred on Thursday evening, and on the following Monday the company sent Doctor Connell over to see him and the doctor came for some two or three days, after which time the claimant was hauled in a car to Doctor Connell's office. The jolt of the car would set up a painful condition in the right side. Assuming further that he never had had any such pain before, any such experience before, and always had been a strong and healthy man and a very strong man in doing manual labor. Assuming all of those facts as hypothetical and taking into account what you found there and the rigidity of the muscles, have you an opinion whether or not what occurred when he was prying on the boulder and slipped was the cause of the condition, his *impaired* condition, that followed? (Italics inserted.) A. Yes.'

"Q. Give that opinion to the commissioner. A. Those facts being true, it would be my opinion that the injury received caused his trouble. . . .

"Q. Let me ask you. Such an injury as I have described here and the pain following and all of these conditions given you in the hypothetical question, did you reach a conclusion of your own that there was some impairment there due to that injury? A. Yes.

"Q. Based on the history and what you found? A. Yes, sir. . . .

"Q. And assuming further if [it] was followed by nausea and he felt fainty and sick to his stomach as described, have you an opinion whether or not he suffered some impairment in that region where you found the rigidity of the muscles? A. Yes; all of those things being true, I have.

"Q. And that opinion is what as to whether or not that was caused by this fall? A. It was caused by his fall."

It will be observed the testimony of the doctor, given prior to his answer to the hypothetical questions, revealed: He examined the

workman on the right side over the region of the liver and stomach and found a rigidity of the muscles; he reached a conclusion of his own, without regard to what the workman said, that an abnormal condition existed at that place on the workman's body, and that he reached the conclusion an irritation existed in the abdominal cavity in the region of the liver and stomach. The answers to the hypothetical questions disclose it was his opinion the injury, the impairment, he found resulted from the fall. Doctor Brookhart was then questioned concerning his knowledge of internal impairment. That testimony was as follows:

"Q. Have you any way of knowing what that internal impairment was where you found the rigidity of the muscles? A. No, sir.

"Q. What could it be? A. He could have been bruised in the region of the gall bladder and had some irritation and inflammation of that. Or it could have been a stretching or injury of the ducts or peritoneum in that region.

"Q. But you did reach the conclusion that he was suffering in that region? A. Yes, sir."

On cross-examination the same doctor testified, in substance: A bruise in that region, in order to produce the results found, would not necessarily cause external evidence of the bruise; if the workman stretched enough to cause the condition which existed, one would as a rule expect some external evidence, but the workman might have an internal injury without external evidence of it; a person might be ruptured without external injury; as a rule there is external evidence in the event of a bruise, but he had seen quite a number of injuries without any external manifestation at all; he would not expect a high temperature unless there was acute infection; from the examination he made on September 5, 1936, he thought the workman was not able to do really heavy manual labor at that time; when he examined him he had true muscle spasm; the rigidity was on the right side, and on the other side the corresponding region was soft and not rigid.

The workman had also testified to the effect that when he slipped he fell on some smaller boulders. Doctor Brookhart further testified:

". . . That such condition could have resulted from an injury such as is alleged; that the impairment probably comes from some injury to the viscera underneath the muscles; that a tear in the region would result from a bruise and not from a slip and a fall . . . knowing the past history of appellee's blood pressure, his blood pressure was probably normal on the day of the examination; that he had no difficulty in examining the appellee; that appellee

could bend forward, but complained of pain when bending sideways; but which way it was, witness was not certain; that he took no X ray and has examined no X ray of appellee . . . if appellee shoveled slime and sludge, lifted it and threw it into a truck, be was doing hard work; that one might do hard work, but do it under stress at all times."

The workman also testified in substance: Since his injury he was unable to do such work as shoveling ore and rock in the mines by reason of the pain in his right side, and that it pained him to do lighter work; he had shoveled some sand or sludge for a total of about four weeks after August 28, 1936, and received therefor $2 per day; that work also resulted in pain in his right side, although he did not fill the shovel; he would go to the rear of the truck and rest in order to continue working and thus hold his job; his normal weight had been between 170 and 185 pounds; at the time of the hearing (November 20, 1936) his weight had fallen to 158 pounds.

Doctor Boswell, called as a witness by the workman, testified in substance: He had known claimant five or six years; previous to this experience he was strong and active and an unusually strong man; he examined him on August 28, 1936, and made quite a thorough physical examination; the patient complained of pain, when he worked, about the rigid portion of his body; the rigidity of the muscles over an injured part is nature's method of protecting the injured part underneath; he had lost quite a good many pounds in weight; he examined him again two or three days before the hearing and found nothing to alter his first diagnosis, as the conditions were about the same; it was his opinion, based upon the hypothetical facts given and upon his own examination, that an injury caused the disability; he gave the patient tonic, digestive medicine and pain-relief tablets; internal organs might have been injured by the fall, such as the liver, pancreas, kidney, stomach or the ligaments or tissues attached to these organs; the patient had the appearance at all times of suffering pain; he was not certain whether the facial expressions of pain were controlled, but he did not think they were; the rigidity of the muscles helped confirm him in the belief the facial expressions of pain were not controlled; he did not use an X ray in making his examination; he did not know how long the impaired condition would continue to exist; there was probably no kidney involvement and there was no pancreas involvement of which he knew; there were no objective symptoms of stomach impairment; from both objective and subjective symptoms, including the vomit-

ing, which followed immediately after the accident, it was possible the stomach sustained some impairment.

There are other portions of the evidence which might be narrated, but it is unnecessary to do so.

Respondent insists there was no circumstantial evidence of the fact the workman suffered an accident, but only the evidence of the workman himself concerning that fact. The testimony of the workman that he was injured in moving the boulder, if believed, was sufficient to support the finding an accident occurred. (*Voiles v. Procter & Gamble Mfg. Co.*, 141 Kan. 451, 452, 41 P. 2d 723.) There was also circumstantial evidence to corroborate both the fact an accident occurred and that it resulted in injury. There was medical testimony the injury resulted in disability. That disability continued and had not altered at the time of the hearing. Moreover, the strict rule concerning circumstantial evidence as applied to other cases does not prevail in compensation cases. In *Supica v. Armour & Co.*, 131 Kan. 756, 293 Pac. 483, it was held:

"In a compensation case it is not required that the claimant shall establish his right to an award by direct evidence alone. Circumstantial evidence may be used to establish the claim, and it is not necessary that the circumstantial evidence should rise to that degree of certainty as to exclude every reasonable conclusion other than that found by the trial court." (Syl. ¶ 2.)

True, there was evidence offered by respondent's medical witnesses and a neutral physician concerning appendicitis and gonorrheal infection and that neither of these conditions was due to traumatic origin. There was no evidence the rigid muscle condition was due to either appendicitis or gonorrhea. There was evidence it was due to the fall. Furthermore, our compensation law prescribes no standard of health for workmen, and it is well settled that accidental injuries are compensable where the accident only serves to aggravate or accelerate an existing disease. (*Blackburn v. Brick & Tile Co.*, 107 Kan. 722, 193 Pac. 351; *Stringer v. Mining Co.*, 114 Kan. 716, 220 Pac. 168; *Vera v. Swift & Co.*, 143 Kan. 593, 56 P. 2d 96.)

Respondent further contends the medical testimony adduced concerning the workman's condition was highly speculative and conjectural, and hence the award cannot stand. In support of this principle we are referred, among other cases, to our own decision in the case of *Whitaker v. Panhandle Eastern P. L. Co.*, 142 Kan. 314, 46 P. 2d 862, and cases therein cited. The evidence in those cases

reached only to the dignity of possibility. It was there only shown the accident might have resulted in the condition found to exist. Here the evidence of possibility pertained only to internal injuries. The fact of the rigidity of the muscles in the affected area of the body was definitely established. Two doctors, besides the workman, testified it was their opinion the condition was the result of the fall. Doctor Brookhart said, "He had a true muscle spasm," and further stated, "From the examination at that time [September 28, 1936], I thought he was not able to do real heavy manual labor." The same doctor stated, "One might do hard work but do it under stress at all times."

Doctor Boswell testified in effect that the rigidity of the muscles confirmed him in the belief the facial expressions of pain were not controlled. His first examination was made on August 28, 1936. He examined him again a few days before the hearing, on November 20, and found the condition about the same.

Was it necessary to prove the duration of the disability by medical testimony? Not in this state. In the recent case of *Cowan v. Kerford Quarry Co.,* ante, p. 682, 72 P. 2d 999, decided November 6, 1937, this court said:

"Appellants direct our attention to a rule which prevails in some jurisdictions to the effect that where the subject of inquiry concerns the probable future duration of an injured workman's incapacity, the testimony of experts is controlling. (*Assurance Corp. v. Industrial Acc. Com.,* 106 Cal. App. 39, 288 Pac. 692.) In Oklahoma it seems that such a question of fact requires the evidence of scientific or professional men to determine it. (*James I. Barnes Const. Co. v. Hargrove,* 167 Okla. 348, 29 P. 2d 573.) We have no such hard and fast rule on this question in this jurisdiction. (*A. T. & S. F. Rld. Co. v. Thul,* 32 Kan. 255, 4 Pac. 352; *Shouse v. Consolidated Flour Mills Co.,* 128 Kan. 174, 178, 277 Pac. 54; *Forsyth v. Church,* 141 Kan. 687, 42 P. 2d 975.)" (p. 684.)

Moreover, G. S. 1935, 44-528, provides a review may be had at any time before final payment of the award for good cause shown. Certainly the evidence offered by respondent, and by the neutral physician appointed by the trial court, was amply sufficient to have justified a denial of the award had the trial court seen fit to follow it. Had the trial court accepted their testimony we would have little, if any, difficulty in affirming that judgment. Irrespective of the apparent persuasiveness of that testimony, the trial court did not follow it. We, however, cannot say the evidence offered in behalf of the workman was not substantial. It follows the judgment must be affirmed. It is so ordered.