## SOUTHERN PAC. CO. v. INDUSTRIAL COMMISSION et al.

No. 6052. Decided March 3, 1939. (87 P. 2d 811.)

*Bagley, Judd, Ray, & Nebeker* and *Thornley K. Swan,* all of Salt Lake City, for plaintiff.

*Joseph Chez,* Atty. Gen., and *George H. Lowe,* of Ogden, for defendants.

WOLFE, Justice.

This is an application to review an order of the Industrial Commission awarding death benefits to defendant Laura Southwick, on account of the death of her husband, William David Southwick. The Southern Pacific Company, petitioner herein, is a self insurer under the Workmen's Compensation Act (Rev. St. 1933, 42-1-1 et seq.).

Southwick was employed by the Southern Pacific Company as a boiler maker. On the morning of February 2, 1938, he was sent to procure a sheet of metal from the iron shop. Sometime later his body was found by a fellow workman. He was found in a standing position pressed by two of the metal sheets against the south wall of the building. About four feet north of the south wall of the building, and running parallel thereto, is a low partition wall against

which the sheets of metal leaned. The south wall is constructed of heavy timber vertical studs on the outside of which is nailed a cover of thin corrugated sheet iron or tin. Southwick's body was found between two of the upright studs and pinned against the corrugated wall by the two metal sheets which were resting against his chest and against two upright studs. His back was up against and bulging out the south tin wall of the building. His head was slumped down over the metal sheets, his hands by his sides. The top of the metal sheets where it came in contact with the body was about four feet high, pressing directly across Southwick's chest. His body was not slumped to one side or the other but was in a fairly upright position. We insert

here a reproduction of a photograph taken of another person who assumed as nearly as possible the exact position in which Southwick was found. A glance at it will be more informative than a page of description.

There was not much weight against his chest because of the timber uprights on each side of the body which took most of the weight of the metal sheets. The timbers were of sufficient thickness that Southwick's body was held firmly by the sheets of metal against the south wall without having broken any bones. The physicians who performed the autopsy found no external evidences of injury except a small scalp wound and a slight discoloration of the skin over one shoulder blade.

The Industrial Commission made a finding in favor of the applicant, Laura Southwick, as follows:

"On the 2nd day of February, 1938 William David Southwick, while in the course of his employment as boiler maker at Ogden, Utah, by the defendant, Southern Pacific Company, suffered an accidental injury in the following manner: While in the act of selecting sheet metal plates, two sheets fell against him pinning him against wall of building, bruising head and chest; said injuries being the exciting or proximate cause of his immediate death."

It is contended on behalf of plaintiff that this finding cannot be upheld; that there is no substantial or competent evidence in the record to sustain the finding of the commission; that the only way by which the commission could have arrived at such a conclusion is by speculation and conjecture; and finally, that the evidence clearly shows Southwick died as a result of natural causes and not as a result of an accident.

In a case such as this, where it is contended that the evidence does not support the finding of the commission, it is the duty of this court to examine the entire record, and if the court finds any substantial competent evidence in support of the commission's finding of a material fact the decision will not be disturbed. *Bingham Mines Co.* v. *Allsop,* 59 Utah 306, 203 P. 644; *Cudahy*

*Packing Co.* v. *Brown,* 61 Utah 29, 210 P. 608; *Norris* v. *Industrial Commission,* 90 Utah 256, 61 P. 2d 413; *Christensen* v. *Dysart,* 42 N. M. 107, 76 P. 2d 1. And every legitimate inference which can be drawn from the evidence must be drawn in favor of an applicant where the Industrial Commission has made an award in his favor. *Continental Cas. Co.* v. *Industrial Commission,* 75 Utah 220, 284 P. 313. It has also been repeatedly held by this court that a material finding of the Industrial Commission cannot be based entirely on hearsay or incompetent evidence. *Park City* v. *Industrial Commission,* 63 Utah 205, 224 P. 655; *Garfield Smelting Co.* v. *Industrial Commission,* 53 Utah 133, 178 P. 57; *Cudahy Packing Co.* v. *Brown,* supra. Nor can an award rest on mere conjecture. *Continental Cas. Co.* v. *Industrial Commission,* supra.

Is there any support for the conclusion of the Industrial Commission in this case, to the effect that Southwick's death was caused by an accident arising out of and in the course of his employment? An autopsy was performed by the company doctor, Dr. Morrell, and Dr. Schelm, a pathologist from the Dee Hospital. They testified that the death was due to an acute dilatation of the heart. There were no fractures in the body anywhere, and no evidence of hemorrhage or asphyxiation. They further testified that Southwick's heart was badly diseased and that this alone could have been the cause of his death. It would have been possible for him to have died suddenly without any external cause. Dr. Morrell testified that Southwick's kidney (he had only one, the other having been removed several years previously) was badly diseased and that this also was sufficient in and of itself to cause death suddenly. While Dr. Schelm said that he did not think the condition of the kidney was sufficient to cause death, yet from an examination of the heart he felt that deceased could have died suddenly without any external shock or injury. In fact, he testified that from a mere examination of the body, without knowing the circumstances under which it was found, he would have con-

cluded that Southwick died from natural causes, there being no evidence of any injury sufficient to cause death. All of this evidence tends to uphold the theory of plaintiff that Southwick died from natural causes. Is there any evidence to support the theory that he met his death as a result of an accident?

Although deceased had been ill at various times in the past, his wife testified that for some time he had been in apparent good health; that there appeared to be nothing the matter with him on the morning of his death. He had gone about his regular work and had made no complaint to anyone of illness or weakened condition. He was sent to get a sheet of metal from the boiler shop. These sheets of metal weigh over 500 pounds each and are kept in the passageway, heretofore spoken of, leaning against the low partition on the north side. When Southwick was found, two of these sheets were leaning over against the timbers along the south wall, pinning Southwick's body between them and the wall.

There was no eye witness to what happened, but the facts and circumstances surounding Southwick's death, including the position in which he was found, give some support to a conclusion that there was an accident which caused his death. If there is circumstantial evidence showing there was an accident and that the accident caused ■ the death, it is sufficient to uphold a finding of the commission to that effect. *Supica* v. *Armour & Co.*, 131 Kan. 756, 293 P. 483; *Kearns* v. *Reed*, 136 Kan. 36, 12 P. 2d 820; *Union Oil Company* v. *Industrial Accident Commission*, 211 Cal. 398, 295 P. 513. In *Kearns* v. *Reed*, supra, the court said:

"Appellants have cited many pertinent authorities from this and other jurisdictions, holding it to be necessary for the claimant to establish these features [whether there was an accident arising out of and in the course of employment] by sufficient evidence before being entitled to an award of compensation, and then in the absence of eyewitnesses, suggest other plausible theories all of which could be said to be sustained to some extent by the circumstantial evidence. If the rules of evidence in cases of this character required such a degree of

certainty as to exclude every other reasonable conclusion, it would be almost impossible to make a finding based largely upon circumstantial evidence. But it was held otherwise in the recent case of *Supica* v. *Armour & Co.*, 131 Kan. 756, 293 P. 483, 484, where it was said: 'In a compensation case, it is not required that the claimant shall establish his right to an award by direct evidence alone. Circumstantial evidence may be used to establish the claim, and it is not necessary that the circumstantial evidence should arise to that degree of certainty as to exclude every reasonable conclusion, other than that found by the trial court.' " [136 Kan. 36, 12 P. 2d 821.]

In the cases above cited the question was chiefly whether there was an accident arising out of and in the course of employment, while here the question is whether there was an accident which caused Southwick's death, it being admitted that Southwick was in the course of his employment when he met his death.

As to the amount of proof necessary to sustain a finding of the Industrial Commission that there was an accident causing death, this court said in *Bingham Mines Co.* v. *Allsop,* supra, at page 645 of 203 P.:

"It was incumbent upon the beneficiaries to prove that the death resulted from an accident arising out of and in the course of deceased's employment. If, however, there is any substantial evidence sustaining the conclusion reached by the Commission, though it be slight and though it may seem unsatisfactory to us, the award made must stand. As stated in *McVicar* v. *Industrial Comm.*, supra [56 Utah 342, 191 P. 1089], the Commission's conclusions are like the verdict of a jury, and will not be interfered with by this court when supported by some substantial evidence. * * * Appellants insist that 'a finding under the Workmen's Compensation Act * * * cannot rest upon mere conjecture, probability, or possibility.' With the elimination of the word 'probability' the quoted statement is unobjectionable and meets with our approval. However, there can be no doubt about the proposition that a finding of the Commission may properly rest upon probabilities."

In the case of *York* v. *State Workmen's Insurance Fund*, 131 Pa. Super. 496, 200 A. 230, 231, a similar situation to the present case was presented. There a workman was found dead beside a car of coal. It was his duty to dump

the cars of coal, and to do so it was necessary to push them for a short distance along the track. The doctor testified that death was "due to a 'rupture or bursting of the coronary artery that feeds the heart muscle.' " The court there held:

"We readily recognize that a presumption of an accidental death is not raised by simply showing a collapse of an employee while at his work. There must be affirmative proof of an accident. *Mooney* v. *Yeagle et al.*, 107 Pa. Super. 409, 164 A. 82. It may be established, however, by circumstantial as well as direct evidence, or by a reasonable and legitimate inference based on a proven fact. *Falls* v. *Tennessee Furn. Co. et al.*, 122 Pa. Super. 550, 186 A. 272."

In another Pennsylvania case, *Hughes* v. *Prizer-Painter Stove Works*, 109 Pa. Super. 53, 165 A. 527, decedent was found dead at the place where he had been working. One doctor testified that in his opinion deceased "had died of a 'heart condition superimposed upon by the condition under which he worked'," while another doctor expressed the opinion that deceased died, "not as a result of dilatation of the heart from overexertion, but of angina, and his death might have occurred when not subjected to any strain." In affirming an award in favor of the applicant, the court said:

"As the lower court well says, 'The inference fairly arises that the work was physically exhausting and productive of strain.' While the law requires a relation of cause and effect between the injury and the death to be established beyond a mere possibility, it is not necessary that it be demonstrated with mathematical precision. 'Probability is sufficient.' *Balch* v. *Mfg. Co.*, 277 Pa. 548, 551, 122 A. 1, 2."

Does the evidence in the present case support the commission's finding? We think it does. All of the facts surrounding Southwick's death indicate that shortly before his death he had been working with these two metal sheets, the combined weight of which was over 1,000 pounds. There was a third sheet still leaning against the partition to the north and directly opposite to Southwick and the two other sheets. There was also a wooden

wedge between the two sheets on the south and the single sheet leaning to the north (see exhibit), indicating that Southwick had been separating the sheets by placing the wedge between them and then working it down, thereby separating the two top sheets from the other. By this process the two sheets could be raised to an upright position and balanced there while a clamp was placed on the other sheet to take it out. The evidence indicates that this was what Southwick was attempting to do. Certain it is that Southwick raised the two sheets to their upright position of equilibrium. They did not raise themselves. After that they made a journey past their upright position revolving about their edges on the floor with their upper edges describing an arc subtended by a chord which was approximately three and one-half feet—the distance from the lower edges on the floor to the studs on the south wall. Either this revolving motion of the sheets carried with it the impotent body of Southwick after his heart had failed, or his heart failed due to the sheets' forcing him backward and knocking him against the tin sheeting, or because of the strain of his resistance to the pressure of their increasing downward thrust during their circulatory journey. If death was caused by such a blow or such a forcing or by the exertion or excitation of resistance, it would be death by accident because it was due to an unexpected event outside of a cause incidental to the ordinary functioning of the workman.

Nor is the commission required to decide on just the specific nature of the accident. It need not have evidence to reconstruct every detail of the chain of cause and effect from the upright position of the steel sheets to their final resting place against the studs. It would be necessary only to eliminate as an equal probability that death, or at least the bodily impotency from a failing heart, came before the steel sheets started on their southward movement from their position of equilibrium or while they were being naturally and intentionally eased down toward

the studs. There are two circumstances which make the inference of such probability less than that of a forcing movement of the sheets carrying a still potent Southwick back toward the sheeting wall. It will be noticed from the picture that his body is slumped frontward with practically no inclining toward either side. If his heart had failed so as to produce impotency during the movement of the sheets southward after passing the equilibrium point, we might ordinarily expect a slumping during that perceptible period of time on one side or the other; or if the slump was directly forward his body might have hung on the edge and been carried back. But the sheets, even as to the position he was found in, were so far up on his chest that it is very unlikely that his limpness came during their southward journey. They were too high (60 inches) for him to slump over and be caught hanging on the edges of the sheets. If the impotency had come during the journey, he would have slid down toward the floor.

One other slight, but significant circumstance added makes it improbable that he slumped directly forward and was carried back to the final position in which he was found. The back of Southwick's head was contused by striking something. The evidence shows that this blow came from a cross piece running horizontally between the studs of such height that had Southwick slumped and been carried back rather than being forced or knocked back, he would not have hit it. The most probable inference then is that while Southwick was balancing the metal sheets in an upright position they became overbalanced toward him, and because of their weight he was not able to maintain them in an upright position. As the sheets fell in his direction the force of their weight would increase as they came southward. They would therefore with increasing force push Southwick back to the south as the sheets fell in that direction. This may have happened suddenly, or Southwick may have exerted pressure and force to keep from being pushed back, but because of the weight of the metal he was

finally overcome. At any rate, he was pushed back with sufficient force to strike his head against the cross beam and pin him behind the sheets against the wall—from which accident he died. This seems to be the most probable inference to be drawn from the facts, and it is one which is not contradicted by any of the evidence—even the testimony of the doctors is consistent therewith.

While both doctors testified that the diseased condition of Southwick's heart could have caused his death, yet both stated that what actually brought about the dilatation of the heart was unknown. If death had been caused by exertion and strain, together with the shock from being forced back against the wall and receiving the injury to his head, there would be no physical evidence of it other than what was found. Dr. Morrell testified:

"The absence of factors showing that there was a direct injury to the body leads me to no other conclusion; (than that he died as a result of natural causes) the fact that he was found in this position makes one say that he must have been killed, but we didn't find any evidence of it on his body.

"Q. You aren't at this time making a positive statement as to just what caused this man's death? A. No, I am not giving a positive statement.

"Q. That is unknowable? A. That is unknowable."

Dr. Schelm testified that the bump on the head could have caused a shock and indirectly been a factor in causing death. He also stated that strain, fright, and other factors may have contributed to death.

From all the evidence and circumstances surrounding the case, we feel that the commission was justified in inferring that death was the result of an accident. On the other hand, the commission might have found that death was due to natural causes. But where there is evidence from which two conflicting inferences might reasonably be drawn, this court should not reverse a decision of the commission which adopts what appears to be the more probable of the two. *Columbia Steel Co.* v. *Industrial Com-*

522

*mission,* 92 Utah 72, 66 P. 2d 124. Where there is no basis for an inference as to how death was caused or, put as it has been put, but rather inaccurately, that where there are in law equal inferences, as in the case of *Tremelling* v. *Southern Pacific Company,* 51 Utah 189, 170 P. 80, affirmed in 70 Utah 72, 257 P. 1066, the jury cannot be permitted to supply the link between the fact of a dead body found in a certain position and the cause of the death by a guess as to how it occurred. But where there is a basis for some reasonable inferences as to how the death was caused, and it cannot be said in law that a reasonable man could not choose one deduction from the underlying facts as against another, the finding of the jury will be upheld. Likewise the finding of the commission.

The award of the Industrial Commission in favor of defendant Laura Southwick is hereby affirmed. Defendants to recover costs.

MOFFAT, C. J., and LARSON, McDONOUGH, and PRATT, JJ., concur.