No. 35,212

LUCY C. MITCHELL, as an Individual, and as Natural Guardian of BETTY JEAN MITCHELL, a Minor, *Appellee,* v. THE MITCHELL DRILLING COMPANY, and ASSOCIATED INDEMNITY CORPORATION, *Appellants.*

(114 P. 2d 841)

Opinion filed July 5, 1941.

*Austin M. Cowan, C. A. McCorkle, W. A. Kahrs, Robert H. Nelson* and *Henry L. Butler,* all of Wichita, for the appellants.

*Dale Kidwell, John Jay Darrah* and *Garner E. Shriver,* all of Wichita, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was a workmen's compensation case. Claimants are the widow and minor child of the deceased workman. They prevailed, and the employer and its insurance carrier appeal.

The sole question is whether the workman met his death in an accident arising out of and in the course of his employment. Appellants contend the evidence is insufficient to show the workman met his death in that manner. They stress certain evidence which might tend to disclose the workman was not so killed. On review we are concerned only with evidence which supports or tends to support the finding of the trial court and not with evidence which is contrary thereto. (*Williams v. Cities Service Gas Co.,* 151 Kan. 497, 499, 99 P. 2d 822.) It remains true, however, as contended by appellants, that there must be evidence to support the finding of the trial court. In substance they contend the workman, at the time of his death, was not at the place where his duties required him to be and the award is based on surmise and conjecture. The contention requires a review of the record.

William Mitchell, the deceased, was employed by the Mitchell Drilling Company. The business of that company consisted of drilling oil and gas wells on leases in which it had an interest and in drilling such wells for others. The workman was employed as a "tool pusher." He was also president of the company. He was killed at approximately seven o'clock a. m., April 6, 1940, when the company car which he was driving in a westerly direction on U. S. highway 50N ran into a culvert. The culvert was located approximately a mile east of the city of Great Bend. According to the record, his duties as "tool pusher" consisted in the supervision of drilling operations. He was in complete charge and supervision of that work. On April 5, 1940, and some days prior thereto, the company had encountered difficulty in the drilling of a gas well a short distance southeast of Lyons. The gas pipe developed a leak at a point approximately 175 feet beneath the surface, with the result that large amounts of gas escaped. In the parlance of men in the gas industry, the well was a "wild well." The condition on the lease and surround-

ing territory became dangerous. Lloyd Deffenbaugh, vice-president of the company and experienced in the oil and gas business, lived in Oklahoma City. He was acquainted with the Otis Pressure Control Company, whose employees were specialists in the business of harnessing "wild wells" and restoring control thereof. The company was employed for that purpose and arranged to have its men appear at Lyons between four and five o'clock a. m., April 6. According to arrangements made between ten and eleven o'clock p. m., of April 5, Mitchell was to meet the representatives of the pressure control company at Lyons upon their arrival at Lyons in order to direct them with respect to the location of the "wild well" and to advise them from what direction to enter upon the lease, depending upon the prevailing currents of the wind. Mitchell met them at Lyons and directed them to the well. He was rational and appeared in full possession of his faculties. It is true he had been on the job day and night for a number of days. Deffenbaugh urged him to get some sleep, saying that he (Deffenbaugh) would spend the day with the men on the lease. Mitchell refused to go to bed, for the reason the company had another well on which drilling was to commence the next morning. It was customary and his practice to be present when the drilling of a well was commenced in order to supervise the work. This second well was located southwest of Lyons and near the small town of Zenith in Stafford county. Paved highways were available the entire distance to the Zenith well from Lyons by traveling west from Lyons on U. S. highway 50N to Great Bend, a distance of 30 miles, and directly south from Great Bend to St. John on highway No. 281, for a distance of 25 miles, and east from St. John to Zenith on U. S. highway 50S, a distance of 15 miles. The entire distance on the paved highways from Lyons to Zenith was only 70 miles. There were shorter routes from Lyons to Zenith, but these routes were not as good. Mitchell might have traveled south from Lyons to Sterling on a paved highway and in a southwesterly direction from Sterling to Zenith. Seven miles of the route from Sterling to Zenith was dirt road. The remainder of that distance might have been traveled on U. S. highway 50S, which was brick pavement and rough. The distance of that route was between 39 and 45 miles. He might have traveled west from Lyons to Ellinwood and then south to Stafford. The road from Ellinwood to Stafford, however, was gravel or oiled road. The company car which Mitchell was driving at the time of the accident was a Chevrolet coupé, and contained a pick-up bed on

which tools and equipment were hauled. The employer paid all expenses of travel. At the time of the accident several elevators were found on the truck bed which are used to lower and raise casing in a well.

It is conceded Mitchell had lost a great amount of sleep during the previous nights. A short time prior to the accident and while Mitchell was on his way west of Lyons, and at a point about one mile east of Ellinwood, his car was found parked on the shoulder of the road. Whether he had pulled onto the shoulder in order to obtain some sleep, or whether his car had stalled, does not appear. At any rate, as a car approached he waived for it to stop and motioned to the driver to give his car a push. That was done and Mitchell proceeded on his way to the point of the accident.

The evidence disclosed that by reason of the fact Mitchell had been on the job continuously for a long time, he had made no change of clothing for several days, and had stated on the evening before that he desired to pick up a clean shirt at his home which was in Great Bend. If he intended to pick up a shirt on the morning of April 6, he had time to do so and to arrive in time for the starting of the well at Zenith, as it was only about an hour's drive from the place of the accident, which occurred at seven o'clock a. m., to the location of the Zenith well. There was also evidence which tended to show it might have been his purpose to converse with a party by the name of Tom Johnson of Wichita, concerning a contract for the drilling of additional wells in the territory near Great Bend. The Mitchell Drilling Company had just finished drilling some wells for Tom Johnson near Great Bend and Johnson was in attendance at a petroleum convention held in Great Bend the night of April 5. There was evidence Mitchell had gone from Lyons to the convention at Great Bend in his oil-field clothing the night of April 5 to see Johnson, but that he had not been able to see him. Mitchell returned to Lyons that same night in order to meet the oil pressure men between four and five o'clock a. m. of April 6, pursuant to his appointment. The Mitchell Drilling Company also had a yard located close to the Trapp Pool at Susank, which is northwest of Great Bend.

The evidence further disclosed that as a "tool pusher," Mitchell was subject to call twenty-four hours of the day, and that during emergencies he frequently did not go to bed over a period of several days and nights. He was a tireless worker and exceptionally loyal

to his company. As superintendent of drilling and as president of the company he had no superior to direct or supervise his work or travel. His travel between wells was a part of his work. He chose his own routes of travel.

Appellants dwell at length upon incidents connected with the workman's trip to Great Bend the previous evening and his return to Lyons during the early morning of April 6. Touching that subject, it is sufficient to note the accident did not occur on that trip.

Appellants insist the emergency was at the "wild well" southeast of Lyons and the accident occurred while Mitchell was driving away from the emergency and in an opposite direction. The Mitchell Drilling Company had at least two jobs in progress at the same time. Mitchell had fulfilled his appointment with the Pressure Control Company representatives with respect to the "wild well" near Lyons and had left the problem of harnessing that well in the hands of experts employed for that specific purpose. Deffenbaugh, the vice-president of the Mitchell Drilling Company, assured Mitchell he would remain at the Lyons well that day. He tried to persuade Mitchell to obtain some rest, but Mitchell apparently felt his presence was required at the commencement of the drilling of the Zenith well. Mitchell, as superintendent of drilling, and as president of his company, had full authority to determine where his presence was most necessary.

The trial court concluded the real question presented was whether, under all the circumstances, it was reasonable to believe that Mitchell, at the time of his death, was on his way to supervise the commencement of the Zenith well. In that conclusion we agree. The evidence upon that issue was not all circumstantial. Claims for compensation, however, may be established entirely by circumstantial evidence. (*Supica v. Armour & Co.*, 131 Kan. 756, 293 Pac. 483; *Hardwell v. St. Louis S. & R. Co.*, 146 Kan. 870, 875, 73 P. 2d 1120.) Nor is it necessary the circumstantial evidence should rise to such a degree of certainty as to exclude every reasonable conclusion other than that found by the trial court. (*Supica v. Armour & Co.*, supra; *Kearns v. Reed*, 136 Kan. 36, 12 P. 2d 820; *Williams v. Cities Service Gas Co.*, 151 Kan. 497, 499, 99 P. 2d 822.)

There was direct evidence the workman intended to go to the Zenith well. It was logical and proper that, as superintendent of drilling activities, he should be there. The evidence disclosed there were several reasons, involving the interests of the drilling company,

which it was reasonable to infer prompted his decision to go by way of Great Bend. He had authority to determine his course of travel and the business he desired to transact for his employer. He was using the company's car. It had machinery on it which is employed in drilling operations. At the time of his unfortunate accident he had progressed sufficiently far to bring him to the Zenith well in time for the commencement of that well. In view of all the circumstances we think it was reasonable to infer the Zenith well was his destination and that he was killed in the course of his employment.

The accident also arose out of his employment. A necessary part of his employment consisted in traveling from well to well and to any other place at which he might desire to transact business pertaining to drilling activities. Manifestly, part of his business consisted of traveling the highways. The hazards and risks of highway travel were incidents of his employment. It was in connection with those hazards of employment that his death occurred and it cannot be said the accident did not arise out of his employment. (*Kennedy v. Hull & Dillon Packing Co.*, 130 Kan. 191, 285 Pac. 536.) See, also, *Stapleton v. State Highway Comm.*, 147 Kan. 419, 76 P. 2d 843. The most reasonable inference with respect to the cause of his death was that, owing to much loss of rest, he fell asleep and the car crashed into the culvert. His drowsy condition cannot effectively be separated from his long hours of labor. There was no evidence that he was not otherwise perfectly normal and in full possession of his faculties.

Appellants emphasize the testimony of claimants' witness, Deffenbaugh, which in part was to the effect that Mitchell might have been going to the drilling company's yard at Susank, to the Zenith well in Stafford county, to his home at Great Bend or that he might have been on his own business. Appellants insist the workman's destination was, therefore, wholly speculative and conjectural. It is true claims for compensation cannot be sustained upon evidence which is purely conjectural. (*Fair v. Golden Rule Refining Co.*, 134 Kan. 623, 7 P. 2d 70.) The trouble with the contention is the award in the instant case does not rest upon mere conjecture and speculation. While the witness Deffenbaugh, of course, could not state the destination of the workman with absolute and unqualified certainty, it will be remembered he also testified that Mitchell, during the previous evening, had told him he thought he would go to the Zenith well after he had finished his conference with the pressure control

representatives the next morning. Under all the evidence, was it reasonable to infer he was executing his expressed intention? There is nothing in the record to indicate he had abandoned that intention. If the direct and circumstantial evidence together warrant a reasonable inference the workman was acting within the scope of his employment when killed, it is enough to sustain the finding of the trial court. (*Supica v. Armour & Co.*, p. 758, supra.) We think the evidence reasonably tends to show he was acting within the scope of his employment. The mere fact he chose to travel paved highways and on that route possibly pick up. a greatly needed change of clothing at his home in Great Bend, although the chosen route necessitated driving somewhat farther, did not alone constitute an abandonment of his employment. (*Woods v. Jacob Dold Packing Co.*, 141 Kan. 363, 41 P. 2d 748.)

Appellants rely upon such cases as *Covert v. John Morrell & Co.*, 138 Kan. 592, 27 P. 2d 553; *Ruff v. Farley Machine Works Co.*, 151 Kan. 349, 99 P. 2d 789; *Holloway v. Consolidated Gas, Oil & Mfg. Co.*, 152 Kan. 129, 102 P. 2d 987, in support of their contention the accident was not shown to have arisen out of and in the course of Mitchell's employment. There is no question concerning the accepted principles laid down in those cases. The facts there, however, are readily distinguishable from those in the instant case and it is not deemed necessary to narrate them. There was sufficient direct and circumstantial evidence in the instant case to support the finding of the trial court that the workman met his death in an accident which arose out of and in the course of his employment. The judgment must therefore be affirmed. It is so ordered.